BANES v. NEW JERSEY TITLE GUARANTEE & TRUST CO.

(Circuit Court of Appeals, Third Circuit. January 24, 1906.)

No. 46.

INSURANCE—TITLE TO PROPERTY—CONSTRUCTION—LOSSES COVERED.

A testator, who owned a half interest in a mortgage, devised his whole estate to his widow for life, with remainder to his children in equal parts. Plaintiff acquired by assignment the interests of two of such children in the mortgage and obtained from defendant, a title guaranty company, a contract of guaranty against loss or damage which he might sustain by reason of existing defects of title or liens affecting his interest in the mortgage. *Held,* that such contract could not be construed, in the absence of any express provision therefor, to be a guaranty that plaintiff acquired a legal title to the assigned interest in the mortgage, and that to entitle him to recover on the contract it was incumbent on him to prove some loss or damage, which was not done merely by evidence that a receiver appointed for the estate of the decedent had collected the portion of the mortgage debt belonging to the estate, and satisfied the mortgage to that extent; it not appearing that the proceeds were not still in the hands of the receiver.

In Error to the Circuit Court of the United States for the District of New Jersey.

Reynolds D. Brown, for plaintiff in error.

Gilbert Collins, for defendant in error.

Before ACHESON, DALLAS and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This was an action brought by Robert
C. Banes against the New Jersey Title Guarantee & Trust Company
upon its guaranty of title. Peter Bentley (the first), on October 1,
1867, took a mortgage on land of the New Jersey Railroad & Trans-
portation Company to secure a loan of $147,000, subsequently reduced
by payment on account to $100,000. On his death a one-half interest
in this mortgage became vested in his son, Peter Bentley (the second).
At the death of the latter, under his will, his wife, Emma P. Bentley,
was appointed his executrix, and his whole estate was devised to her
for life, with remainder in equal shares to his seven children, includ-
ing Richard and Peter (the third). In January, 1900, Robert C.
Banes (the plaintiff in this action) acquired by assignments the inter-
ests of Richard and Peter (the third) in the above-mentioned mort-
gage. Upon his written application, the New Jersey Title, Guarantee
& Trust Company (the defendant in this action) issued to the plain-
tiff its guaranty or title policy, dated January 24, 1900, which con-
tains the following covenant:

"This guaranty witnesseth that the New Jersey Title Guarantee & Trust
Company, in consideration of the sum of $300, to it paid by Robert C. Banes,
does hereby covenant that it will indemnify, keep harmless, and guaranty
the said Robert C. Banes  *  *  *  from all loss or damage not exceeding
the sum of $14,000, which the said party guarantied shall sustain by reason
of defect of title of the party guarantied to the estate, mortgage, or interest
described in Schedule A, hereto annexed, or because of liens or incumbrances
charging the same at the date of this guaranty; saving the defects, objec-
tions, liens, or incumbrances excepted in Schedule B, or by the conditions
of this guaranty hereto annexed and hereby incorporated into this contract."

In Schedule A, under the marginal note—"The estate or interest of
the party guarantied covered by this guaranty"—is the following
specification:

"Assignment of interest in mortgage: The interest which was of Peter
Bentley the third (being an undivided 1/7 of 1/2) and the interest which
was of Richard Bentley (being an undivided 1/7 of 1/2) in and to a certain
mortgage of the Jersey Railroad & Transportation Company to Peter Bent-
ley, dated October 1, 1867, and recorded October 19, 1867, in book 47 of mort-
gages for Hudson county, on page 605, to secure the payment of $147,000,
afterwards reduced to $100,000."

Here follows a description of the land covered by the mortgage.
Schedule A also contains a list of various assignments of the mort-
gage, including the assignments of the interests of Richard Bentley
and Peter Bentley (the third) to the plaintiff. The annexed condi-
tions of the guaranty we do not deem it necessary to quote.

Some of the children of Peter Bentley (the second), having be-
come dissatisfied with the management of their father's estate by
his executrix, Emma P. Bentley, in 1894 had a receiver of the estate
appointed by the court of chancery. On March 2, 1901, this re-
ceiver collected the one-half interest in the said mortgage of which

Peter Bentley (the second) died possessed, and gave a satisfaction piece therefor.

The course of the trial of this case appears from the following extract from the brief of counsel for the plaintiff in error:

"Plaintiff's case consisted simply of proof of the title policy, and proof that one William Lewis, as receiver of the estate of Peter Bentley, 2d, had received the $50,000 of the mortgage and satisfied the mortgage to that extent. Plaintiff rested, proceeding on the theory that a legal title to 2/7 of ½ of the mortgage was insured, and it had been shown that the legal title was in the receiver."

This being the plaintiff's case, the court instructed the jury to render a verdict of "no cause of action," which was done, and judgment entered accordingly.

It will be perceived that the defendant's guaranty is against loss or damage which the plaintiff shall sustain by reason of defects of title or because of liens or incumbrances as specified therein. Therefore, by the very terms of the contract, it was incumbent upon the plaintiff to show some loss or damage. This is the general doctrine in actions on contracts of indemnity. Jeffers et al. v. Johnson, 21 N. J. Law, 73; Miller v. Fries, 66 N. J. Law, 377, 49 Atl. 674. In this case there was no proof whatever of any loss or damage to the plaintiff. No defect of title to the land covered by the mortgage appeared, nor was it shown that any lien or incumbrance charging the same existed. There was no evidence to show that, by reason of debts of Peter Bentley (the second) or other cause, the plaintiff would not realize in full under his assignments. All that the plaintiff showed was that the bare legal title to the one-half of the mortgage of which Peter Bentley (the second) died possessed was outstanding either in his executrix or in the receiver appointed by the court of chancery. By the payment to the receiver the plaintiff's right in the mortgage was simply transferred to the fund in the hands of the receiver, the officer of the court. There was not a particle of evidence to indicate that that fund had been impaired or was in danger of diminution. Certainly, the title policy does not in terms guaranty to the plaintiff a legal title to the specified assigned interest in the mortgage, and it is difficult to perceive how it could have been intended or understood by the parties so to do. The interest which passed to the plaintiff by the assignments was only a fractional interest in the one-half of the mortgage of which Peter Bentley (the second) died possessed, and the legal title to which for some purposes necessarily vested in his executrix. We think that the policy did not insure a legal title to the interest in the mortgage assigned to the plaintiff as claimed by him. In other respects we intimate no opinion as to the scope of the defendant's guaranty, a point as to which the parties differ. That question is not properly before us. Whatever the scope of the guaranty may be, the plaintiff's present action failed for lack of evidence of any loss or damage or any breach of contract.

The offer by the plaintiff of parol evidence to show the circumstances under which the title policy was issued, and particularly that the insurance of a legal title was demanded, and that the deeds of

assignment were drawn by the defendant's directions, we think was properly overruled. It is fundamental that all prior negotiations are merged in the written contract. Of course, the proposed evidence went to the question of the intention of the parties, and that could only be found in their contract.

In view of the evidence introduced upon the trial of this case, we think the learned judge below was right in directing the jury to render a verdict of no cause of action; and, accordingly, the judgment is affirmed.