FIDELITY UNION CASUALTY COMPANY v. ALBERT WILKINSON.

No. 7151.   Decided March 23, 1938.
Rehearing overruled April 20, 1938.
(114 S. W., 2d Series, 530.)

*Geo. T. Burgess,* of Dallas, for plaintiff in error.

*Bond & Porter,* of Terrell, and *Joel R. Bond,* of Dallas, for defendants in error.

MR. JUSTICE CRITZ delivered the opinion of the Court.

The opinion of the Court of Civil Appeals fully and fairly states the facts and law questions involved in this appeal. Also, we think such opinion correctly decides such law questions. The opinion of the Court of Civil Appeals is reported in 94 S. W. (2d) 763, and, as so reported, such opinion is hereby adopted as the opinion of the Supreme Court.

1 The record of this Court pertaining to this case will show that we granted this writ of error on assignments of error contending that the Court of Civil Appeals erred in affirming the judgment of the district court in favor of Wilkinson, and against the Fidelity Union Casualty Company, for $250.00 attorney's fees and $15.00 for other expenses. After a careful study of the facts of this record, we have reached the conclusion that the judgments of the two lower courts, as to these two items, are correct. Under the contract of title insurance, the Casualty Company was in duty bound to defend the validity of Ogle's title to the $2700.00 note and liens securing same. This it wrongfully failed and refused to do. Wilkinson was therefore compelled to defend such title himself. Certainly under such a record he ought to be allowed to recover the reasonable expenses he was compelled to incur in so doing. These two items of expense were incurred by Wilkinson in defending such title. It is therefore proper that he recover the same.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered March 23, 1938.

Rehearing overruled April 20, 1938.

For the convenience of the Bar, the opinion of the Court of Civil Appeals for the Fifth Supreme Judicial District, at Dallas, by MR. CHIEF JUSTICE JONES, is here inserted, as follows:

On December 19, 1934, Dr. Albert Wilkinson instituted this suit in a district court of Dallas County, against E. Ogle, Robert Swann, Dessert Johns, Home Owners Loan Corporation (a Federal corporation) and Fidelity Union Casualty Company of Dallas (a domestic corporation).

Briefly stated, plaintiff alleges a cause of action against E. Ogle on a promissory note in the sum of $1,079, bearing 10% interest per annum from April 28, 1932, and 10% additional on the principal and interest as attorney fees, aggregating the sum of $1627.95; and against E. Ogle and Robert Swann, jointly and severally, on a collateral vendor's lien note of $2,700, alleged to have been executed by one John Butler, now deceased, payable to Robert Swann, endorsed and transferred to E. Ogle and, in turn to appellee. In the alternative, the suit is against the Fidelity Union Casualty Company on a policy of insurance issued by the Company, insuring appellee for "any loss" which he might sustain because of failure in title to the real estate described in the policy, and the insured's interest or estate in and to the vendor lien and note mentioned; also for $25 alleged necessary expenses, and $500 attorney fees, occasioned by appellant's breach of the policy's warranty, in failing and refusing to defend the title, interest and estate of appellee in the vendor's lien and note. Dessert Johns and the Home Owners Loan Corporation were vouched into the suit, because of adverse claims asserted by them in the real estate described in the collateral vendor's lien and note.

Each of the defendants, except E. Ogle and the Fidelity Union Casualty Company, filed answer denying, under oath, the genuineness of the vendor's lien and note, and the transfers thereof, in that, the note and transfers were forgeries. Ogle filed no answer. The Fidelity Union Casualty Company, by general denial and special pleas, challenged all of the allegations in appellee's petition as to it, denied the validity of its policy and its liability thereunder, and sought cancellation of the policy. The ground alleged for the policy's invalidity, is that E. Ogle, who procured the policy from the Company was, at

the time, the agent of appellee, and with knowledge of the fraud and forgeries of the note and transfers, procured the issuance of the policy; and that his knowledge, because of such agency, is imputable to appellee, thereby relieving the Company of liability on the policy. The issue as to Ogle being the agent of appellee, and all special pleas of appellant, were controverted by appropriate pleadings of appellee.

On the trial of the case before the court, without a jury, judgment was rendered in favor of appellee, Dr. Wilkinson, and against appellant, E. Ogle, for the amount of the note—$1,079—with 10% interest per annum from April 26, 1926, until paid, and 10% attorney fees, aggregating the sum of $1627.95; and against appellant, Fidelity Union Casualty Company of Dallas, as surety, for the sum of $1,079, with 6% interest thereon from April 26th, 1932, until paid; and also, the additional sum of $250 attorney fees and $15 expenses, aggregating the sum of $1560.51; and, in favor of other defendants.

Appellant, Fidelity Union Casualty Company, alone appeals; and by cross assignments appellee contends that the trial court erred in refusing to allow him judgment against the Fidelity Union Casualty Company, as surety, to the full amount of the Ogle note—$1,079—with 10% interest per annum and 10% attorney's fees, which was found by the trial court to be $1627.95, as appellee's "actual loss," plus an additional sum of $250 attorney fees and $15 expenses, as an original obligation to appellee, as per the terms of the policy, aggregating, at the date of the judgment, the sum of $1892.95.

Appellant's assignments of error present three main contentions: (1) the defect in title to the vendor's lien note must be ascribed to the acts of E. Ogle, who procured the policy, and at the time was the agent of appellee; therefore, his acts are imputable to appellee, relieving appellant of legal liability; (2) the policy sued on undertakes only to guarantee appellee against "actual loss," and the only loss which appellee sustained, for which the Company is liable is the $1000, which appellee originally loaned to Ogle, and does not include interest at the contract rate, or attorney fees; and (3) the attorney fees of $250 and expenses of $15 allowed in the judgment, as original obligations of the Company, are not recoverable because of the insured's failure to comply with the terms and conditions of the policy. We will consider the contentions in the order named.

The evidence shows, indisputably, that the endorsement and transfer of the vendor's lien note in question, are forgeries, and known to Ogle to be forgeries at the time he secured the

issuance of the policy of insurance in question. If Ogle, in such transaction, was acting as agent for appellee and caused such policy to be issued only as agent for appellee, then the knowledge of such forgeries would be imputed to appellee, and he would be charged with the legal result in procuring indemnity policy on forged instruments, even though he had no actual knowledge of such forgeries. On the other hand, in securing such policy of insurance, if Ogle was acting for himself, in an effort to meet a condition laid down by appellee, on which the requested loan of $1000 would be made, then Ogle would not be an agent of appellee, and appellee would not be charged with Ogle's knowledge in respect to the forgeries.

The trial court found that Ogle was not appellee's agent in securing the issuance of the insurance policy. Is this finding sustained by evidence?

The uncontradicted evidence shows that, sometime prior to July 26, 1926, E. Ogle approached Dr. Wilkinson for the loan of $1000, offered as security therefor a $2,700 vendor lien note, purported to have been executed by one John Butler, payable to Robert Swann, and thereafter transferred, by endorsement and written assignment, to E. Ogle. Appellee agreed to make the loan on the proffered security, on the condition that Ogle would have the title to the note and vendor's lien guaranteed by a policy of insurance, one satisfactory to appellee's attorney, to indemnify appellee from all loss which he might sustain by reason of defects in title to the land described in the note, and the estate or interest in the security offered.

Ogle alone negotiated with appellant for the policy of insurance, advising the representatives of the Company of the purpose of the policy—that Ogle was procuring $1000 as a loan from Dr. Wilkinson; that he was pledging the $2,700 vendor's lien note executed by John Butler, as security therefor; and that the policy was to guarantee appellee in the title to the security. The Company required of Ogle curative title papers to be executed by Ogle and Swann; and after the lapse of eight or ten days, caused the policy to be issued to Ogle, in the name of Dr. Albert Wilkinson, Ogle paying the premium and all incidental expenses therefor. A Mr. Curtis, assistant manager of appellant company, testified that Dr. Wilkinson was not known in the transaction, and that his Company was dealing exclusively with Ogle.

When Ogle had met this condition of appellee, to secure the requested loan, he returned to appellee, exhibited the vendor's lien note, the written transfers and the policy of insurance

issued by the Fidelity Union Casualty Company; whereupon, appellee referred all papers to his attorney and, after procuring his attorney's approval, required Ogle to execute a promissory note for $1000, attached the securities thereto and paid Ogle the sum of money represented by the note. The collateral vendor's lien note eventually turned out to be genuine, but the endorsements and transfers of the payee therein, Robert Swann to Ogle, are shown to have been forged by Ogle himself, and hence this security to appellee failed.

On April 28, 1931, as a renewal and extension of the amount then due on the original note of $1000, Ogle executed and delivered to Dr. Wilkinson a renewal note in the sum of $1,079, due April 28, 1932, bearing interest from maturity at the rate of 10% per annum, and providing for 10% additional on the principal and all past due interest as attorney fees, if placed in the hands of an attorney for collection. Default was made in the payment of the note and thereafter placed in the hands of a Mr. Carpenter, an attorney, for collection, causing the attorney fees to become payable.

2    Under the above related facts, we cannot subscribe to appellant's first contention, that the trial court erred in holding that Ogle was not the agent of appellee, at the time he negotiated for the policy of insurance; or that the culpable acts of Ogle are imputable to appellee. On the contrary, we are of the opinion that, by the terms of the policy, appellant stands liable as surety for appellee's actual loss in the failure of title to the collateral security note and lien.

The representatives of the Title Company knowingly and exclusively gave credit to the words and acts of Ogle; they dealt with Ogle alone, with the understanding of both parties of his relationship with appellee. The relationship of Ogle and Wilkinson was merely that of borrower and lender, Ogle acting for himself to satisfy the requirement of Wilkinson, in order to receive benefits of his own application for the loan. In dealing with Ogle, the representative of the Title Company knew that he was acting under the circumscribed and limited authority, and not as agent of Wilkinson. Manifestly, Ogle's interest in the transaction was adverse to that of Wilkinson, and this circumstance was definitely made known to the Title Company. We overrule the assignments.

3    On the second contention, the pertinent provisions of the policy issued by the Fidelity Union Casualty Company, involved here are as follows:

"In consideration of the sum of $21.05 for the examination

of the title, and the further sum of $7.02, as a premium for this policy of insurance (the Fidelity Union Casualty Company) does hereby insure Dr. Albert Wilkinson * * * the incumbrance referred to in Schedule 'A,' hereunto annexed for a period of eleven years from the date hereof, against any loss (not exceeding Twenty-Six Hundred Fifty and no/100 ($2,650.00) Dollars of the principal or interest secured by the instrument described in Schedule 'A,' hereunto annexed, which the insured shall sustain by reason of defects in the title to that certain real estate, as set forth in said Schedule 'A,' or the estate or interest in said real estate as set forth in Schedule 'B,' hereunto annexed * * * ."

## Schedule 'A'

"Description of real estate, title to which is insured: That certain lot, tract or parcel of land in Dallas County, Texas, described in a certain Deed of Trust executed by John Butler to Ed Harvey, trustee, on the 23rd day of July, 1925, and recorded in Book——page——of the Records of Deeds of Trust of Dallas County, Texas. Being all that certain lot, tract or parcel of land lying and being situated in the City and County of Dallas, Texas, being all of Lot 10 in Block 'B' of P. L. Dickerman's subdivision of Durrett's Homestead Addition to the City of Dallas, Texas. This policy covers one note in the principal sum of $2,700.00, dated July 23rd, 1925, executed by John Butler, due and payable to the order of Robert Swan, in monthly installments of $25.00 each, first installment due and payable on or before the 20th day of each month thereafter until said note is fully paid."

## Schedule 'B'

"The interest in the land insured is such title, or part of the title, to said land as will satisfy the lien of the insured, as shown by the said instrument hereinabove mentioned, and this Company hereby guarantees that the above mentioned instrument secures a first lien on the property therein described, and that there are no homestead claims affecting same * * * ."

"This policy is issued and the liability of the Company is based upon the following conditions and stipulations: (The conditions and stipulations Nos. 1, 2 and 3 have no bearing here, but will be referred to later in this opinion, as affecting attorney fees and expenses).

" * * * (4) The liability of this Company shall in no case exceed the actual loss of the insured, and this Company reserves and is hereby given the right and option in case any loss is claimed hereunder, to pay the insured the entire indebtedness

shown to exist by the instrument described in Schedule 'A' hereof * * *.

"(5) When the liability of this Company has been definitely fixed, in accordance with the policy, the loss or damage shall be forthwith payable * * * ."

It will be observed, from the express terms of its policy, that the Title Company stands as surety for "any loss" which the insured might sustain because of failure in title to the real estate mentioned therein, and the estate or interest of the insured in the vendor's lien note, guaranteeing the instrument to be a first lien on the described property.

The insured, from the testimony stated above, had a lien on the collateral note to the extent of his note and indebtedness against Ogle; therefore the insured's "actual loss," by virtue of the failure in title to his security, must be valued at an amount equal to the note, with interest and attorney fees, to which the security was attached. Evidently, the interest and attorney fees, as provided in the note, are as much the "actual loss" to the insured as the principal of the loan. We do not understand by what canon of construction could it be said that the title policy, covering insured's loss, only applies to the principal of the note and not to the interest and attorney fees, as provided therein. As we view the situation, the Title Company stands in the same relative position to the Ogle note, principal, interest and attorney fees, as did the collateral vendor's lien note, and bears the same responsibility as the collateral note which the Company insured, had it and the transfers been genuine. The only limitation placed on the Company's liability for insured's "actual loss" is to be the sum of $2,650. Where the parties have agreed that 10% shall be paid on the note and, in case of default, 10% attorney fees shall be added, the amount thereof is recoverable, and the Title Company stands as security therefor, not to exceed the limitation stated in the policy.

In 38 C. J. 244, the text writer says: "Loss. A generic and relative term. 'Loss' is not a word of limited, hard and fast meaning. It may mean either the act of losing, or the thing lost. In some instances, 'loss' may mean that which can never be recovered and in others that which is simply withheld, or that of which a party is dispossessed. The term had been held to be synonymous with or equivalent to, other terms, as for instance, 'damages,' 'deprivation,' 'detriment,' 'injury.' "

4 Reverting to the third contention: The policy of insurance provides that appellant's liability shall extend "to defend the

same (the subject-matter of the policy) so far as is necessary to protect the insured," upon conditions:

"(1) In case any action or proceeding shall be begun against the insured upon any defects, lien or encumbrances * * *, the insured shall at once notify this Company thereof in writing, by registered letter, or by written notice, duly receipted for by an executive officer of the Company * * *, and shall secure to this Company the right to defend the same so far as is necessary to protect the insured, and the insured shall render all reasonable assistance in such defense, and this Company will at its own cost and charge defend the insured in such action or proceeding; * * * and whether such by this Company shall be successful or unsuccessful this Company will pay in addition to the loss, all costs imposed on the insured in litigation carried on by this Company for the insured under this policy. But this Company will in no case be liable for any costs or expenses incurred by the insured in such litigation without the consent of this Company * * *.

"(3) This Company shall be subrogated to and be entitled to all the rights, securities and remedies of the insured; * * * and the insured, if requested by this Company, shall enforce all such rights, securities and remedies for the benefit of this Company, provided this Company shall pay all costs, expenses and charges incident to any such proceeding or suit * * *."

The record reveals that about four or five weeks before the institution of this suit, Frank Bowles, President of the Fidelity Union Casualty Company, was advised of the forgeries in the insured's title to the vendor's lien note and transfers; and, in conversation with appellee's representative, Mr. Bowles was asked to defend the insured's title, to which he remarked that "he did not care to commit himself," that he had no attorney employed to defend the suit, and would not say whether he would do so, but suggested that the insured write him a letter to put the Company on notice of the pending controversy.

On December 12, 1934, appellee, in response to the suggestion of Mr. Bowles, in letter of that date, notified the appellant of the forgery controversy, and demanded of the Company to defend such action, protect the title and lien of the insured, and bear the necessary expenses therefor. The receipt of this letter was, on December 14, 1934, acknowledged by the President and Manager of the Company, without disclosing a willingness to defend or protect the insured in the action.

On December 17, 1934, appellee addressed and mailed another letter to the Title Company, requesting it to furnish evi-

dentiary documents necessary for the defense of his title to the security, defray expenses therefor and "to advise by letter whether Dr. Wilkinson may depend on your furnishing these exhibits." The Company received the letter, but made no response to the request made.

On December 19, 1934, appellee instituted suit, primarily against Ogle and the claimants to the insured property; and alternatively, against the Title Company on the policy of insurance. The answer of appellant, manifestly antagonistic to appellee's claim, denied liability on the policy, tendered a return of the premium and sought cancellation of its obligation; also, on this appeal, appellant's contentions are inconsistent with and adverse to the contentions of appellee.

· The testimony in the record further shows that appellee employed attorneys to defend his title, estate and interest in the lien and note covered by the policy, agreeing to pay a reasonable compensation for their services; and also, appellee incurred expenses in procuring evidence necessary for a proper defense to the litigation. The trial court found, and it is unchallenged that, the attorney fees, incurred by appellee, is of the reasonable sum of $250, and the expenses in the sum of $15, and that the fees and expenses were necessary to a proper defense of the action.

We believe that a reasonable construction of the policy is, that the Title Company agreed to defend the title, estate and interest of the insured to the property covered by its policy and defray all necessary and reasonable expenses therefor; and, as a corollary, if the Company declines or refuses to defend any proceeding or action brought, affecting the property, to become liable for all necessary and reasonable expenses incurred by the insured. Under the facts disclosed, it could hardly be said that the insured was compelled to wait on the Title Company indefinitely to determine whether it would defend the action. It was the Company's contractual duty to defend the insured's title to the property covered by its policy, and pay all necessary expenses incident to such· action. The Company declined to "commit itself," one way or the other,· therefore, under these circumstances, clearly the insured was within his rights to assume the burden of defense and protect his interest. We overrule appellant's assignments.

Reviewing the whole record, we are of opinion that the "actual loss" sustained by appellee, under the terms of appellant's policy, is the security to the Ogle note—principal, interest and attorney fees—aggregating, at the date of judgment, the

sum of $1627.95; that appellant guaranteed the title to the security in an amount not to exceed the sum of $2,650, and as such guarantor, or surety, liable to appellee in the sum of $1627.95, as of date of the judgment; and, in addition thereto, primarily liable to appellee for the sum of $265, expenses incurred by appellee in defense of the cause; accordingly, the judgment of the lower court is reformed, and as reformed, affirmed.

Opinion delivered May 2, 1936.

Mr. Justice BOND not sitting.

### ON REHEARING.

The motion by appellant is without merit, except possibly wherein it challenges our finding that, the Ogle note of $1,079, after default was made, was placed in the hands of a "Mr. Carpenter," an attorney, for collection, causing the attorney fee to become payable. The record reflects that the note was placed in the hands of appellee's attorney for collection; that suit was brought thereon, and that, when the question of forgery came up, a Mr. Carpenter wrote a letter to Ogle relative to the note. The "Mr. Carpenter" was Wilkinson's attorney, during the negotiations for the loan and policy, so naturally, we concluded that he was the attorney with whom the contract for attorney fee was made. On further reflection, we find that the note was placed in the hands of the attorneys who instituted this suit, and the contract was made with them, instead of with Mr. Carpenter, causing the attorney fee to become payable.

We feel that the error complained of is immaterial. The suit was primarily brought against Ogle for the amount of the note, interest and attorney fee. Ogle did not file an answer, and appellant defended only as to the matters alleged against it, on the policy of insurance. Judgment by default was entered against Ogle and, on evidence submitted, the trial court found in favor of appellee for the amount of the note, interest and attorney fee, and we approve the findings.

Again reviewing the record, it clearly appears that appellee Wilkinson, because of the forgery, was deprived of the benefits of the vendor's lien and note, given to him as security, and which appellant's policy of indemnity was given to protect the Ogle note—principal, interest and attorney fee. The Ogle note would have been collectible out of the security, if it had been genuine, thus appellee's actual loss, for which appellant became liable by the terms of its policy, was the amount of the Ogle

note, principal, interest and attorney fee, limited only to an amount of $2,650.

With the exception noted, the motion for rehearing is overruled.

Motion overruled.

Opinion delivered May 30, 1936.