# BLACKHAWK PRODUCTION CREDIT ASSOCIATION, a foreign corporation, Plaintiff-Respondent,

v.

# CHICAGO TITLE INSURANCE COMPANY, a foreign corporation, Defendant-Appellant.†

Court of Appeals

*No. 85–0524. Submitted on briefs May 23, 1986.—Decided November 20, 1986.*

(Also reported in 400 N.W.2d 287.)

† Petition to review granted.

324

For the defendant-appellant the cause was submitted on the briefs of *Robert J. Schwab* of *C. Vernon Howard* and *Stroud, Stroud, Willink, Thompson & Howard* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Lewis Murach* of *Rudolph, Kubasta, Rathjen & Murach* of Wautoma.

Before Gartzke, P.J., Dykman, J., and Eich, J.

GARTZKE, P.J. Chicago Title Insurance Company appeals from a judgment for $85,000 plus interest in favor of Blackhawk Production Credit Association. The judgment is on an $85,000 title policy covering Blackhawk's security in real estate for its $280,000 loan to Kim Rolfe.

The basic facts are undisputed. Kim Rolfe owed Blackhawk about $280,000 on a 1979 note secured by livestock, farm products, and farm machinery. The note was also secured by irrigation equipment. Kim owned an undivided one-half interest in three parcels totaling 413.5 acres of farmland he and Philip Rolfe were buying on a land contract. The irrigation equipment was installed on that land.

In March 1980 Kim Rolfe assigned his one-half interest in the land contract to Blackhawk as additional security for his $280,000 note. The same day Chicago Title issued its $85,000 title policy to Blackhawk. The policy insures Blackhawk's security interest against "loss or damage" not exceeding $85,000 sustained by reason of "any defect in or [prior] lien or encumbrance on" Kim's one-half interest in the three parcels. The

policy excepts the land contract, as well as other specific prior encumbrances not pertinent to this appeal.

Neither Blackhawk nor Chicago Title knew that Kim and Philip Rolfe had already assigned their land contract interest to First National Bank and Trust Company of Rochelle as security for their debt to that bank. Blackhawk first learned that its security was junior to Rochelle Bank's when the land contract vendors began an action to foreclose the interests of Kim and Philip Rolfe. By that time, their debt to Rochelle Bank exceeded $350,000, and Kim Rolfe's debt to Blackhawk had risen to $297,132. Blackhawk settled the foreclosure action by payments to the prior encumbrancers. Through that settlement, Blackhawk acquired clear title, including Philip Rolfe's interest, not only to the three parcels but also to an additional 41 acres. Chicago Title's policy did not cover the 41 acres. Blackhawk then sold the three parcels and the 41 acres.

The trial court concluded that by settling the foreclosure action and selling the land, Blackhawk reduced its unsecured loss from a probable $245,132 to $98,774. Blackhawk sold all the land it acquired and the irrigation equipment for $583,500, an average of $1,285 per acre. The court reasoned that the sale price, less $52,685 for the 41 acres, established a $530,815 value for the three parcels in the foreclosure action. The court reduced that value by $52,000 for the irrigation equipment, since Blackhawk's prior lien on the equipment would have allowed Blackhawk to remove it. The $216,560 land contract balance was superior to Blackhawk's security and the delinquent taxes totalled $9,147. Thus, the three parcels had a net value of $253,108, in which Kim Rolfe had a one-half interest. Since Kim Rolfe owed Rochelle Bank over $350,000,

foreclosure would have wiped out his one-half interest in the three parcels, leaving no security for Blackhawk.

The trial court found that to obtain a release of Rochelle Bank's interest, Blackhawk paid the bank $111,250, of which $4,500 was paid to a third party and $106,750 was retained by the bank. Rochelle Bank then quitclaimed the three parcels to Blackhawk and conveyed the additional 41 acres to Blackhawk by trustee's deed. The court specifically found that the $106,750 paid to Rochelle Bank satisfied the bank's interest and that no part of that amount was paid for the 41 acres.

The trial court concluded that by acquiring and selling the three parcels and settling with Rochelle Bank, Blackhawk reduced its "net unsecured loss" to an amount which nevertheless exceeded the $85,000 policy limit. Since that loss would not have occurred but for the Rochelle Bank lien and the amount paid to settle it, the court granted judgment against Chicago Title for $85,000. The court's computations are as follows:[1]

| | | |
|---|---:|---:|
| Sale Price of Three Parcels with Irrigation Rights | | 530,815 |
| Payments for Other Encumbrances | | |
|     Land Contract Vendors | 216,255 | |
|     Delinquent Taxes | 9,147 | |
|     Total | | (225,402) |
| Balance Available to Blackhawk Before Rochelle Bank Lien | | 305,413 |
| Paid to Rochelle Bank | | (106,750) |
| Balance Available to Blackhawk After Rochelle Bank Settlement | | 198,663 |
| Kim Rolfe Debt to Blackhawk | | (297,132) |
| Net Unsecured Loss | | (98,469) |

The pertinent law is that applicable to policies (commonly known as "mortgage policies") issued to

---

[1] Our calculations differ slightly from those of the trial court because of an arithmetical error.

creditors insuring the titles to land in which the creditors hold security interests against title defects and prior liens or encumbrances. As a general rule, "[A] title policy insuring a mortgagee insures only the title to the land securing his debt and not the debt, obligating the insurer to indemnify the mortgagee against loss or damage resulting from defects in his title as mortgagee but neither guaranteeing that the mortgaged property is worth the amount of the mortgage nor guaranteeing that the mortgage debt will be paid." Annotation, *Measure, Extent or Amount of Recovery on Policy of Title Insurance*, 60 A.L.R.2d 972, 976 (1958).

Accordingly, the mere existence of a title defect or prior encumbrance does not establish a loss for purposes of mortgage insurance. The secured creditor incurs a loss only if the security proves inadequate because of the defect or a prior encumbrance. *Green v. Evesham Corp.*, 438 A.2d 944, 946 (Sup. Ct. N.J. 1981); *Ring v. Home Title Guarantee Company*, 168 So. 2d 580, 582 (Ct. App. Fla. 1964); *First Commerce Realty v. Peninsular Title Ins.*, 355 So. 2d 510 (Ct. App. Fla. 1978).[2]

---

[2] This differs from the law applicable to a title policy issued to a property owner. Because the owner has sustained a loss or damage resulting from the title defect, the owner may require the insurer immediately to remove the defect. *Caravan Products Co., Inc. v. Ritchie*, 259 A.2d 223 (N.J. 1969). "The fee interest of an owner is immediately diminished by the presence of a lien thereon since its resale value will always reflect the cost of removing the lien. It is otherwise with a mortgage lender whose loss cannot be measured unless the underlying debt is not repaid and the security of the mortgage proves inadequate." *Green v. Evesham Corp.*, 438 A.2d 949, 946 (Sup. Ct. N.J. 1981).

This is not to say that only a foreclosure or judicial sale can fix the secured creditor's loss caused by a title defect or prior encumbrance. Other facts may suffice. The loss may be established by evidence of the value of the security and the amount paid to discharge the prior lien. *Atlanta Title & Trust Co. v. Allied Mortgage Co.*, 12 S.E.2d 147, 149 (Ga. 1940); *compare Greve v. Evanston Corp.*, 430 A.2d 949 (mortgagee took deed in lieu of foreclosure but appraisal showed value of remaining lands to exceed loan balance). *See also* three Florida cases, stating that foreclosure is unnecessary if the mortgagee proves the amount of its loss. *Ring v. Home Title Guarantee Company*, 168 So. 2d 580, 582; *Goode v. Federal Title & Insurance Corporation*, 162 So. 2d 269, 270–71 (Ct. App. Fla. 1964); *Florida Home Insurance Company v. Braverman*, 163 So. 2d 512, 513 (Ct. App. Fla. 1964).

Hence, Blackhawk's attempt to reduce its loss by settling out prior encumbrances and other interests rather than letting the foreclosure take its course is no impediment to its establishing its loss for mortgage insurance purposes.

When compared with the result Blackhawk achieved by settlement, there is no question but that Blackhawk substantially reduced its potential loss. It is, however, Blackhawk's settlement of the foreclosure action which must be analyzed to determine whether Blackhawk sustained "loss or damage" under the title policy. Whatever the actual loss or damage Blackhawk sustained, it was reduced to specifics by the settlement.

The first issue regarding the settlement is purely factual. Chicago Title attacks the trial court's finding

330

that no part of Blackhawk's $106,750 payment to Rochelle Bank was for the 41-acre parcel. Blackhawk had no security interest in the 41 acres and did not insure title to that parcel. Chicago Title contends that because the 41 acres had a value of $52,685 and were subject to a $17,530 mortgage which Blackhawk also paid, either Blackhawk paid $35,155 for the 41 acres or it received a gift.[3] Since the latter alternative is ridiculous, Blackhawk therefore paid Rochelle Bank only $71,515 for the three parcels in which it held a security interest. If this challenge succeeds, it reduces Blackhawk's "net unsecured loss" under the trial court's analysis.

Our review of factual findings by a trial court is strictly limited. Section 805.17(2), Stats., provides in part, "Findings of fact [by a trial court]shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." We search the record for evidence to support the trial court's findings of fact, not to overturn it. *In Matter of Estate of Becker*, 76 Wis. 2d 336, 347, 251 N.W.2d 431, 435 (1977).

The finding that no part of the $106,750 Blackhawk paid to Rochelle Bank was for the 41 acres is not clearly erroneous. An officer of the bank testified that it had no beneficial or secured interest in the 41 acres but held the land only as trustee under an Illinois land trust, the sole beneficiary of which was Philip Rolfe. Philip directed the bank to convey the parcel to Blackhawk. The bank applied the entire $106,750 against Kim Rolfe's note.

---

[3] Blackhawk paid $17,500 directly to M & I Bank of Coloma for a release of the latter's mortgage on the 43-acre parcel.

The officer suspected that Philip directed the bank to convey the 41 acres to Blackhawk so as to relieve him from some of his debt, presumably the mortgage which Blackhawk paid, and to obtain some money for his wife.[4] Rolfe did not testify. The trial court accepted the bank officer's testimony, rather than Chicago Title's arguments. We will not overturn the court's finding based on that testimony.

Since no other findings are contested, we treat the facts found by the trial court as established. Application of the terms of an insurance policy to the established facts raises a question of law. *Kremers-Urban Co. v. American Employers Ins.*, 119 Wis. 2d 722, 735-36, 351 N.W.2d 156, 163 (1984). Whether Blackhawk sustained "loss or damage" under the terms of its mortgage policy is therefore a question of law. We of course do not defer to the trial court's conclusions of law, but decide those matters anew. *First Nat. Leasing Corp. v. Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 250, 253 (1977).

The trial court's analysis confuses Blackhawk's loss on its loan with loss of security caused by a defect of title. The confusion is shown by the court's conclusion that the "net unsecured loss" which resulted after paying the Rochelle Bank lien establishes loss or damage to Blackhawk's security. The two losses are not the same and cannot be equated. The distinction is important in the case before us because Blackhawk purchased an

---

[4] Philip Rolfe's wife was the third party who received $4,500 of the $111,250 payment to Rochelle Bank, leaving $106,750 for the bank. Why she received anything is unexplained but it is reasonable to infer that Philip Rolfe could not or would not direct the conveyance to Blackhawk unless she received $4,500.

$85,000 mortgage policy even though the secured debt was $280,000 and rose to $297,132.

Whether Blackhawk sustained a "net unsecured loss" does not establish its loss recoverable on the policy. The loss on Blackhawk's loan is uninsured. Chicago Title did not undertake to pay it. It undertook to indemnify Blackhawk against loss or damage not exceeding $85,000 sustained by reason of a defect in or prior lien or encumbrance on Kim Rolfe's interest in the three parcels. It agreed, in effect, that if because of a title defect Blackhawk's security was less than $85,000, Chicago Title would make good the difference. As applied to this case, it agreed that if because of Rochelle Bank's lien, Blackhawk's security was impaired, and if because of that impairment the security was less than $85,000, Chicago Title would make good the difference.

The facts are that Blackhawk paid a total of $332,152, including $106,750 to Rochelle Bank, to acquire clear title to the three parcels which secured its $297,132 claim against Kim Rolfe. Blackhawk sold the three parcels for $530,815. Consequently, Blackhawk had available to it unimpaired security of $198,663 to apply against the $297,132 loan balance. Blackhawk had purchased an $85,000 mortgage policy. Since the unimpaired security exceeded $85,000, Blackhawk cannot recover on the Chicago Title policy.

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the complaint.