BLACKHAWK PRODUCTION CREDIT
ASSOCIATION, a foreign corporation,
Plaintiff-Respondent-Petitioner,

v.

CHICAGO TITLE INSURANCE COMPANY, a
foreign corporation, Defendant-Appellant.

Supreme Court

*No. 85–0524. Argued November 3, 1987.—Decided January 13,
1988.*

(Also reported in 423 N.W.2d 521.)

For the plaintiff-respondent-petitioner there were briefs by *Lewis Murach*, and *Rudolph, Kubasta, Rathjen & Murach*, Wautoma, and oral argument by *Lewis Murach*.

For the defendant-appellant there was a brief by *Robert J. Schwab, C. Vernon Howard,* and *Stroud, Stroud, Willink, Thompson & Howard,* Madison, and oral argument by *C. Vernon Howard.*

DAY, J.   This is a review of a published decision of the court of appeals, *Blackhawk Production Credit Ass'n v. Chicago Title Ins. Co.,* 135 Wis. 2d 324, 400 N.W.2d 287 (Ct. App. 1986), which reversed a judgment of the circuit court for Waushara county, Circuit Judge Frederic W. Fleishauer of Portage county presiding, against Chicago Title Insurance Company (Chicago Title) for failure to disclose or except a superior lien in a mortgagee's policy of title insurance. We conclude that the computation of damages made by the court of appeals, as well as that made by the circuit court, was erroneous. We therefore reverse the court of appeals decision and remand for findings to determine the extent of actual loss Blackhawk Production Credit Association (Blackhawk) sustained due to the defect in title of the real property security interest it insured with Chicago Title.

The facts of this case are not in dispute. On January 22, 1979, Kim and Philip Rolfe obtained an interest as tenants in common in a land contract for 413.5 acres of agricultural real estate in Waushara county, Wisconsin. On March 27, 1980, Kim Rolfe assigned his undivided one-half interest in the land contract to Blackhawk to provide additional security for a $279,901.52 indebtedness on notes he executed in 1979. His debt was already partially secured by a separate purchase money security agreement in all livestock, farm products, crops, machinery, and irrigation equipment he owned. Blackhawk determined that the fair market value of Kim Rolfe's equity in the

undivided one-half interest in the land was worth at least $85,000 (the amount by which Blackhawk felt it was undersecured on its notes).

On the date of Rolfe's assignment, Chicago Title issued a title insurance policy in the amount of $85,000 to Blackhawk. This policy indemnified Blackhawk against any "loss or damage," and "costs, attorneys' fees and expenses which [Chicago Title] may become obligated to pay," sustained by reason of "any defect in or lien or encumbrance on" the security interest Blackhawk held in Kim Rolfe's land, unless otherwise excluded from coverage. The policy further provided:

> "Subject to the provisions of Schedule B, this policy covers and guarantees against any loss and damage which the assured may sustain, not exceeding the face amount of this policy, by reason of either (a) defects in the title of the vendees under the land contract described in Schedule A hereof, or (b) defects in the title of the vendors named in said land contract to the fee of the real estate covered thereby. This policy does not, however, guarantee anything with respect to the amount that has been paid upon said land contract at the date of the policy or the amount that may remain unpaid thereon at said date."

Schedule B listed as excepted prior encumbrances the superior interests held in fee simple and under land contract on this acreage, exclusions for delinquent and then-assessable taxes, and the right of Kim Rolfe to reacquire the interest in the property "upon payment of the obligation for which said assignment [to Blackhawk] is security." The policy stated that the "liability of Chicago Title under the policy shall not exceed the least of: (i) the actual loss of the insured claimant; or

(ii) the amount of insurance stated in Schedule A [$85,000]." It further established that Chicago Title,

> " ... at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured, or a defense interposed against an insured in an action to enforce a contract for a sale of the estate or interest in said land, to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy."

Neither Blackhawk nor Chicago Title was aware that Kim and Philip Rolfe had previously executed a collateral assignment of their entire interest as vendees in the land contract to The First National Bank and Trust Company of Rochelle (Rochelle Bank) on January 25, 1980. Chicago Title did not list this assignment as an excepted prior lien in the title insurance policy issued to Blackhawk.

In February, 1981, the land contract vendors commenced a foreclosure action against Kim and Philip Rolfe for default in payments. Blackhawk was named as a party defendant and first learned that Rochelle Bank held a lien on the entire 413.5 acres superior to Blackhawk's lien on Kim Rolfe's undivided one-half interest. The Rochelle Bank lien secured two promissory notes executed by Philip Rolfe, for which Kim Rolfe was the guarantor. At the time of foreclosure, the principal amount of those notes exceeded $350,000. This encumbered all equity held by both Kim and Philip Rolfe in the property.

Pursuant to the terms of the title insurance policy, Blackhawk timely notified Chicago Title of the Rochelle Bank lien. Blackhawk further advised Chica-

go Title in advance that it intended to purchase the farmland, thereby attempting to mitigate its loss if possible. Except for requesting answers to interrogatories from Blackhawk, Chicago Title did not intervene or participate in negotiations to resolve the land contract foreclosure action.

After a series of transactions with the superior lienholders, Blackhawk settled the foreclosure action by purchasing unencumbered fee simple title to the entire Rolfe farm, including Kim Rolfe's undivided one-half interest which was insured by Chicago Title, the uninsured one-half interest held by Philip Rolfe, and an additional forty-one acres of adjoining land which was held by Rochelle Bank as Trustee for Philip Rolfe and was also not insured by Chicago Title. The superior liens paid by Blackhawk included a $216,255 balance due on the land contract, $9,147 in delinquent taxes, and $111,250 to Rochelle Bank, who in turn paid $4,500 of that amount to Sandra Rolfe for yet another lien of Philip's share of the property. Other miscellaneous payments and fees not pertinent to this action were made as well.

Of particular importance was Blackhawk's arm's length settlement of Rochelle Bank's $350,000 superior claim for the sum of $106,750 ($111,250 − $4,500), establishing this substantially lower amount as the fair market value of Rochelle Bank's superior interest in the property. Blackhawk's first priority lien on the irrigation equipment installed on the land apparently persuaded Rochelle Bank to sell its security interest for a reduced amount, since the land value would have dropped substantially had this equipment been removed. The sum of $106,750 was the most Rochelle Bank believed it could have obtained for its interest in the land upon foreclosure without the irrigation

equipment after subtracting the other superior liens of record. It was determined by the circuit judge at trial that no portion of the amount paid to Rochelle Bank was for the forty-one acre adjoining parcel and that the Bank would not have settled Kim Rolfe's indebtedness for any lesser amount[1]

After clearing the adjoining forty-one acre parcel and converting it to irrigated farmland, Blackhawk sold all of the property, including the irrigation equipment and the forty-one acre parcel, for a total selling price of $583,500. After subtracting the amounts Blackhawk had paid to obtain clear title, Blackhawk gained $198,663 from the sale of the 454.5 (413.5 + 41) improved acres of land. Applying this to Kim Rolfe's indebtedness of $297,132 ($280,000 plus accrued interest), Blackhawk determined its net loss to be $98,469 ($198,663 − $297,132 = <$98,469>). It, therefore, sued Chicago Title to recover under its policy of title insurance.

At trial, the circuit court found that Blackhawk incurred a loss covered under the terms of the policy. The court concluded that Blackhawk would have had no land value available to it after subtracting the cost of the superior liens, including the unexcepted Rochelle Bank lien, from the sale price of the 413.5 acres of farmland with the irrigation equipment in place.

The circuit court then made a determination of Blackhawk's net loss after it had purchased the property at foreclosure sale and resold it:

---

[1]While Chicago Title contested the circuit court's findings regarding the forty-one acre parcel, we conclude from examination of the record that these findings were not against the great weight and clear preponderance of the evidence.

| Sale price of 413.5 acres of farmland with irrigation equipment | | |
|---|---|---|
| | $530,815.00[2] | |
| | <216,255.00> | balance due on land contract |
| | <9,147.00> | delinquent taxes |
| | <106,750.00> | amount for which the Rochelle Bank lien was settled (less $4,500 to Sandra Rolfe) |
| | <297,132.00> | principal and interest due on the Kim Rolfe notes to Black-hawk |
| | <98,469.00> | net unsecured loss |

Based on these computations, the court ruled that Chicago Title should pay policy limits of $85,000 plus interest. The court granted the recovery of pre-judgment interest but denied punitive damages. Chicago Title appealed the damage award.

The court of appeals found that the circuit court had erred in determining that the "net unsecured loss" which resulted after paying the Rochelle Bank lien established loss or damage to Blackhawk's security. It concluded that Blackhawk had made a profit of $198,663 on the sale of the 454.5 acres of property and, as a result, had $198,663 of unimpaired security available to apply against Rolfe's $297,132 loan balance. Since its unimpaired security exceeded the $85,000 value of the policy issued by Chicago Title,

[2]The $530,815.00 figure used by the circuit court was based on a cost per acre of $1,285.00 for the total number of acres sold by Blackhawk ($583,500 − 454.5 = $1,285).

Blackhawk sustained no actual loss and was not entitled to recover anything under the policy. The court of appeals, therefore, reversed the judgment with directions to dismiss the complaint. Blackhawk then petitioned this court for review.

On appeal Blackhawk contends it suffered an actual loss recoverable under the terms of its title insurance policy because of an unexcepted superior lien, despite the fact that it ultimately made a profit on the sale of the insured property it used as partial security for its loan. Chicago Title maintains that the court of appeal's analysis correctly determined to the contrary. To resolve this issue this court must determine the proper method of computing damages resulting from a defect in a mortgagee's policy of title insurance where an arm's length settlement of the unexpected defect has been made by the insured mortgagee.

■

Application of the terms of an insurance policy to established facts is a question of law. *Kremers-Urban Co. v. American Employers Ins.,* 119 Wis. 2d 722, 735–36, 351 N.W.2d 156, 163 (1984). This court may review questions of law without deference to the conclusions reached by circuit court and court of appeals. *State v. Nordness,* 128 Wis. 2d 15, 24, 381 N.W.2d 300, 304 (1986).

■

The issue raised in this case is one of first impression in this state. The decided weight of authority of other jurisdictions, while not binding precedent, is persuasive in resolving this issue along with our own independent analysis. *See State v. Buelow,* 122 Wis. 2d 465, 470–71, 363 N.W.2d 255, 259 (Ct. App. 1984).

Title insurance has been described as a contract of indemnity. Its purpose is to indemnify the insured for impairment of its interest due to failure of title as guaranteed in the title insurance report. That is, it protects against losses sustained in the event that a specific contingency, such as the discovery of an unexcepted lien affecting title, occurs. *Lawrence v. Chicago Title Ins. Co.,* 192 Cal. App. 3d 70, 74–75, 237 Cal. Rptr. 264, 266 (1987).

The policy used by Chicago Title is a standard form which insures against "actual loss" due to defects of title. Under the terms of such a policy, the insured has the burden of establishing the amount of actual loss up to the face amount of the policy. *Lake Havasau Community Hosp. v. Arizona Title Ins. & Trust Co.,* 141 Ariz. 363, 372, 687 P.2d 371, 380 (1984); *Banes v. New Jersey Guarantee & Trust Co.,* 142 F. 957, 958 (3d Cir. 1906).

Defining and measuring actual loss under a title insurance policy is not the same for the owner who has title to property, and a mortgagee who holds only a security interest in the borrower's title. The fee interest of an owner is immediately diminished by presence of lien since resale value will always reflect the cost of removing the lien. A mortgagee's loss cannot be measured unless the underlying debt is not repaid and the security for the mortgage proves inadequate. *Green v. Evesham Corp.,* 179 N.J. Super. 105, 109, 430 A.2d 944, 946 (1981). For a mortgagee, title insurance undertakes to indemnify against loss or damage sustained by reason of defects of title or liens upon the land, but does not guarantee either that

the mortgaged premises are worth the amount of the mortgage or that the mortgage debt will be paid. *Demopoulos v. Title Ins. Co.,* 61 N.M. 254, 255, 298 P.2d 938, 939 (1956); Couch on *Insurance,* sec. 57:189, 205 (2d ed., 1983 & 1986 supp.).

> Broadly speaking, most of the cases in which the question has arisen have deemed a mortgagee's loss to be the difference between the value of the mortgage subject to the defect and what its value would have been had the defect not existed, in other words, the extent to which his security has been impaired.

Annotation, *Measure, Extent, or Amount of Recovery on Policy of Title Insurance,* 60 A.L.R.2d 972, 976 (1958) (footnote omitted); *see also Fifth Mut. Bldg. Soc'y of Manayunk's Appeal,* 317 Pa. 161, 176 A. 494 (1935) (the first articulation of the mortgagee loss formula).

■■■■ The fact that Blackhawk ultimately purchased the property on which it held a security interest does not change the nature of the contractual relationship bargained for between the mortgagee and the title insurer. A mortgagee's policy of title insurance does not convert to an owner's policy upon purchase of the insured land at foreclosure sale. *CMEI, Inc. v. American Title Ins. Co.,* 447 So.2d 427, 428 (Fla. Dist. Ct. App. 1984). Neither should Blackhawk be penalized for voluntarily attempting to resolve the title dispute when Chicago Title failed to do so. Some earlier cases held that the sole means of establishing a mortgagee's security interest (and thereby providing the basis for calculating "actual loss") was limited to land value as determined at foreclosure sale. *See Palliser v. Title*

*Ins. Co. of New York,* 161 Misc. 490, 115 N.Y.S. 545
(N.Y. Sup. Ct. 1908). Subsequently, courts have recog-
nized that in addition to foreclosure, any other reason-
able means are acceptable to determine the value of
the mortgagee's security interest. *See, e.g., Ring v.
Home Title Guaranty Co.,* 168 So. 2d 580, 582 (Fla.
Dist. Ct. App. 1964); *Atlanta Title & Trust Co. v. Allied
Mortgage Co.,* 64 Ga. App. 38, 39, 12 S.E.2d 147,
148–149 (1941) (discharge of lien before foreclosure
sale); *Narberth Bldg. & Loan Ass'n v. Bryn Mawr
Trust Co.,* 126 Pa. Super 74, 79–80, 190 A. 149, 152
(1937).

It is undisputed in this case that Blackhawk
properly notified Chicago Title of the defect in title to
the insured property created by the undiscovered
superior lien held by Rochelle Bank. The existence of
a defect encumbering title is one element which
Blackhawk, as a mortgagee, must prove to establish
recovery. In addition, a mortgagee must establish its
actual loss by proving that sufficient value existed in
the land upon which it held a security interest and
that this value was encumbered by the superior
undisclosed lien.

> If a mortgage lien is insured, and it turns out that
> there exists an undiscovered lien superior to that
> of an insured mortgagee, the insured must show
> that the security of the insured lien was in fact
> impaired by the prior lien. Absent such a showing,
> the insured has not presented evidence sufficient
> to establish a claim of actual loss or damage
> sustained or incurred. The mere fact of an undis-
> closed prior lien is insufficient to establish this
> claim; a showing that the prior lien renders the
> insured lien "insecure" must be made as well.

D. Barlow Burke, *Law of Title Insurance,* sec. 2.2 32–33 (1986 & 1987 supp.) (footnote omitted). When proving that equity exists, the court in *Atlanta Title,* 64 Ga. App. at 40, 12 S.E.2d at 149, further noted, "[t]he insurable value of a mortgage on real estate is the fair market value of the realty which secures the mortgage, and is not controlled by the original purchase-price of the mortgage."

If the interest held by Blackhawk was valueless without the superior lien, it cannot claim any lost value because the lien existed. Conversely, if the security interest held by Blackhawk had established value, the greatest amount it can recover as a mortgagee for the title defect under its policy of title insurance is the value of the interest held in the land up to the stated policy limits of the insurance. *Florida Home Ins. Co. v. Braverman,* 163 So.2d 512, 513 (Fla. Dist. Ct. App. 1964).

■ The facts of the present action are complicated by the existence of superior excluded encumbrances which were known by the parties and properly excluded as exceptions to the title policy. In effect, those liens hold the position of the first mortgagee and Blackhawk's interest is that of a second mortgagee. Where the value of a second mortgagee's security interest completely fails because of superior undisclosed liens, its loss depends, as does that of a first mortgagee, upon the value of the mortgaged property. However, since a second mortgagee's interest is subject to the first mortgage, it has as security for its mortgage only the mortgagor's equity, the value of the mortgage property in excess of the amount of the first mortgage. *Ferrell v. Inter-County Title Guar. & Mortgage Co.,* 213 So. 2d 518, 520–521 (Fla. Dist. Ct. App.

1968); *Morris v. Chelsea Title & Guar. Co.,* 12 N.J. Misc. 428, 431, 171 A. 819, 820–821 (1939); *Narberth Bldg. & Loan Ass'n. v. Bryn Mawr Trust Co.,* 126 Pa. Super. 74, 190 A. 149 (1937).

Under the facts of this case, only the value of the underlying one-half undivided interest in the 413.5 acres is pertinent in determining Blackhawk's actual loss. Transactions concerning the other uninsured one-half interest, the additional acreage, the irrigation equipment and subsequent improvements to the property are irrelevant to this computation because Chicago Title agreed to insure against actual loss only Blackhawk's security interest in Kim Rolfe's one-half undivided interest, nothing further. Once the value of the security interest has been determined by foreclosure or other reasonable means, the insurer should gain no added benefit because of an insured's business acumen regarding later resale for profit of improved land, but neither would its liability be increased if by poor business dealings an insured had lost money on subsequent sale of the property. *See, e.g., Title Ins. Co. of Richmond, Inc. v. Industr. Bank of Richmond, Inc.,* 156 Va. 322, 333–34, 157 S.E. 710, 714 (1931).

■Under the terms of the Chicago Title policy, Blackhawk was also entitled to recover costs, attorney fees and expenses associated with loss or damage to the value of its security interest by reason of any defect of title. Courts have allowed recovery of attorney fees and costs, provided that the insured proves the reasonable value of those costs rendered in attempt to clear title. *See Stone v. Lawyers Title Ins. Corp.,* 537 S.W.2d 55 (Tex. Civ. App. 1976), *aff'd in part and rev'd in part,* 554 S.W.2d 183 (1977); *Fidelity Union Casualty Co. v. Wilkinson,* 94 S.W.2d 763, 767

(Tex. Civ. App. 1936), *aff'd,* 114 S.W.2d 530 (1938) (title company liable for all "necessary and reasonable expenses incurred by the insured" in defending action). We therefore conclude that Blackhawk is entitled to recover as part of its actually sustained loss those costs, attorney fees and expenses which it can prove were necessary and reasonable to incur in removing the defect of title affecting the value of its security interest, namely, the superior, undisclosed Rochelle Bank lien.

Applying the law to the facts of this case, the value of Blackhawk's security interest in the underlying land it insured can be determined from its settlement of the Rochelle Bank lien. Rochelle Bank had concluded that the most it could have obtained upon foreclosure sale for its lien on the 413.5 acres, without irrigation equipment and after subtraction of superior liens of record, was $106,750. This would have depleted all value in the property. In effect, the $106,750 was the amount of equity which would have been held by Kim and Philip Rolfe as tenants in common had the Rochelle Bank lien not existed and had title been as described by Chicago Title's policy to Blackhawk. Blackhawk secured its notes only with Kim Rolfe's one-half interest in the 413.5 acres, however, so the value of its security interest in the land was $53,375 ($106,750 ÷ 2).[3]

---

[3]When Blackhawk settled with Rochelle Bank, it established not only the fair market value of the superior lien but, under the facts unique to this case, also provided a value for the security interest held by Blackhawk in the property. That Blackhawk made a profit on its subsequent sale of the improved property is not, in itself, relevant. The later sale of the property might have had the potential to also value the one-half interest in the 413.5 acres of land, but intangibles such as the increased value of the

Actual loss to Blackhawk is calculated by determining the difference between the value of Blackhawk's security interest had title been as described in its insurance policy ($53,375) and the value of the mortgage subject to the defect ($53,375 − $106,750 = <$53,375>). Though a negative balance would result, Blackhawk may not recover an amount greater than the value of its security interest, or, in this case, $53,375.

Moreover, under the terms of the Chicago Title policy, Blackhawk is entitled to recover whichever amount is less, either the actual loss to Blackhawk as a result of defect or the face value of the title policy. Since the loss in land value of $53,375 was less than the $85,000 limits of the policy, the lower figure of $53,375 would be recoverable by Blackhawk. Computations were not made at trial, however, to determine Blackhawk's recoverable costs and attorney fees associated with the settlement of the Rochelle Bank superior lien. We, therefore, remand this action with directions to the circuit court to determine Blackhawk's costs, attorney fees and expenses required to remove Rochelle Bank's superior interest, to add that amount to the $53,375 in damages sustained by Blackhawk, and enter judgment accordingly.

property with the irrigation equipment installed, the acquiring of additional land, and improvement of the entire parcel prior to sale unduly complicated such a determination. Had these factors been separated and a dollar value of the one-half interest in land alone been calculated based upon this resale, it, like foreclosure sale and other reasonable means of valuation, could have provided an alternate means of valuing the underlying security interest. In the interest of judicial economy, it is reasonable in this case to use the arm's length transaction between Blackhawk and Rochelle Bank to value Blackhawk's security interest.

*By the Court.*—The decision of the court of appeals is reversed and the matter remanded for further proceedings consistent with this opinion.

STEINMETZ, J. (dissenting). I agree with the following analysis in the court of appeals decision, *Blackhawk Credit v. Chicago Title Ins.,* 135 Wis. 2d 324, 333, 400 N.W.2d 287 (Ct. App. 1986):

> "Whether Blackhawk sustained a 'net unsecured loss' does not establish its loss recoverable on the policy. The loss on Blackhawk's loan is uninsured. Chicago Title did not undertake to pay it. It undertook to indemnify Blackhawk against loss or damage not exceeding $85,000 sustained by reason of a defect in or prior lien or encumbrance on Kim Rolfe's interest in the three parcels. It agreed, in effect, that if because of a title defect Blackhawk's security was less than $85,000, Chicago Title would make good the difference. As applied to this case, it agreed that if because of Rochelle Bank's lien, Blackhawk's security was impaired, and if because of that impairment the security was less than $85,000, Chicago Title would make good the difference.
>
> "The facts are that Blackhawk paid a total of $322,152, including $106,750 to Rochelle Bank, to acquire clear title to the three parcels which secured its $297,132 claim against Kim Rolfe. Blackhawk sold the three parcels for $530,185. Consequently, Blackhawk had available to it unimpaired security of $198,663 to apply against the $297,132 loan balance. Blackhawk had purchased an $85,000 mortgage policy. Since the unimpaired security exceeded $85,000, Blackhawk cannot recover on the Chicago Title policy."

I would affirm the court of appeals.