No. 14696

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

H. JAMES OLESON, Personal Representative
of the Estate of Joy Ann Sunford, Deceased,

Plaintiff and Respondent,

vs.

FARMERS INSURANCE GROUP, a corporation,

Defendant and Appellant.

---

Appeal from:  District Court of the Eleventh Judicial District,
Honorable James M. Salansky, Judge presiding.

Counsel of Record:

For Appellant:

Murphy, Robinson, Heckathorn and Phillips, Kalispell,
Montana
I. James Heckathorn argued, Kalispell, Montana

For Respondent:

Hash, Jellison, O'Brien and Bartlett, Kalispell, Montana
Kenneth E. O'Brien argued, Kalispell, Montana

---

Submitted:  December 13, 1979

Decided:  JAN - 8 1980

Filed:  JAN

_____
Thomas J. Kearney                     Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Respondent H. James Oleson filed an action for declaratory judgment in the District Court of the Eleventh Judicial District, the Honorable James M. Salansky presiding. The action requested the court to determine whether Thomas H. Barton was an uninsured motorist within the meaning of three liability insurance policies issued by appellant, Farmers Insurance Group, and owned by Harry W. Grover.

This case was submitted on an agreed statement of facts. Both parties filed motions for summary judgment. The District Court held that Barton was an uninsured motorist within the meaning of the policies issued by Farmers Insurance Group and entered judgment accordingly. This appeal followed.

Respondent Oleson is the personal representative of the estate of Joy Ann Sunford. Ms. Sunford was riding in a car with Thomas H. Barton when it was involved in an accident. Ms. Sunford died as a result of the accident.

At the time of the accident, Barton had liability insurance in the amount of $10,000 per each person and $20,000 for each accident he was involved in. Harry W. Grover, Ms. Sunford's grandfather, had purchased three separate insurance policies from Farmers Insurance Group. Each contained uninsured motorist coverage for Ms. Sunford in the amount of $25,000. Under the terms of the insurance policies, Farmers agreed to pay all sums the owner or operator of an uninsured motor vehicle would be legally responsible to pay because of injury sustained by Ms. Sunford. The policies defined uninsured motor vehicle as ". . . a land motor vehicle . . . of which there is, in at least the

amounts specified by the financial responsibility law of the state in which the insured motor vehicle is principally garaged, no bodily injury liability insurance . . ."

The following issue is presented on appeal:

Is Thomas H. Barton an uninsured motorist within the meaning of the policies issued by appellant covering Ms. Sunford?

Respondent Oleson must show two things to recover under the terms of the uninsured motorist policy at issue here. First, respondent must prove that Barton would be legally responsible to pay Ms. Sunford's damages because of bodily injury sustained by her in an automobile accident. Second, he must show that Barton did not have insurance "in at least the amount specified by" Montana's Motor Vehicle Safety-Responsibility Act. (Herein referred to as the Act.) The parties present no question on appeal concerning the responsibility of Barton for damages suffered by Ms. Sunford. The problem, therefore, lies in determining if the insurance coverage carried by Barton is at least the amount specified by the financial responsibility law. In interpreting the Act, we note this case arose before the 1979 amendments to the Act. The following interpretation therefore deals with the Act as it read before the amendments.

The key portion of the clause of the insurance contract at issue stated that a third-party tortfeasor will be considered uninsured unless the third party carries insurance that meets the minimum limits specified by the financial responsibility law. ". . . The word 'specified' means 'to mention or name in a specific or explicit manner; to tell or state precisely or in detail.' . . ." Aleksich v. Industrial Accident Fund (1944), 116 Mont. 127, 138, 151 P.2d 1016.

See also Herrin v. Erickson (1931), 90 Mont. 259, 268, 2 P.2d 296; Roche Valley Land Co. v. Barth (1923), 67 Mont. 353, 357, 215 P. 654.

It is important to note the term "specified" does not mean "required." The Act only requires a motorist to carry liability insurance in certain instances. Velte v. Allstate Ins. Co. (1979), ____ Mont. ____, 593 P.2d 454, 456, 36 St.Rep. 724, 726; Lewis v. Mid-Century Insurance Company (1969), 152 Mont. 328, 332, 449 P.2d 679; Boldt v. State Farm Mutual Automobile Ins. Co. (1968), 151 Mont. 337, 342-43, 443 P.2d 33. The Act requires coverage when a motorist has been involved in an accident or convicted of certain driving offenses or when there is an outstanding judgment against the motorist as a result of a past automobile accident. Boldt, 151 Mont. at 343. The parties here present no evidence that Barton fell into any of the categories requiring proof of financial responsibility before the accident involving Ms. Sunford. The Act, therefore, did not require Barton to carry insurance.

Since the language in the uninsured motorist policy refers to insurance specified rather than required by the Act, however, the inquiry cannot end with a determination that Barton was not required to carry insurance. The Court must determine the minimum limits on liability insurance "named in an explicit manner" or "stated precisely" by the Act.

Prior to the 1979 amendments, the Act contained conflicting definitions of minimum financial responsibility limits. Section 61-6-102(4), MCA, defined "proof of financial responsibility" as:

> ". . . proof of ability to respond in damages
> for liability, on account of accidents . . .
> arising out of the ownership, maintenance or
> use of a motor vehicle, <u>in the amount of $10,000
> because of bodily injury to or death of one per-
> son in any one accident and</u> . . . <u>in the amount
> of $20,000 because of bodily injury to or death
> of two or more persons in any one accident</u> and
> in the amount of $5,000 because of injury to or
> destruction of property of others in any one
> accident." (Emphasis added.)

The Act also provided, "(1) Proof of financial responsibility when required under this part . . . may be given by filing: (a) a certificate of insurance as provided in 61-6-133 or 61-6-134." Section 61-6-132(1)(a), MCA.

Section 61-6-133(1), MCA, stated in part:

> "Proof of financial responsibility may be fur-
> nished by . . . <u>certifying that there is in
> effect a motor vehicle liability policy</u> for
> the benefit of the person required to furnish
> proof of financial responsibility. . ." (Em-
> phasis added.)

Section 61-6-103, MCA, defined "motor vehicle liability policy." The definition required policy limits of $25,000 because of injury to or death of one person in an accident, $50,000 for injury to or death of two or more persons in an accident, and $5,000 for property damage in any one accident. Section 61-6-103(2)(b), MCA.

Thus, the section of the Act that defined proof of financial responsibility set $10,000/20,000 minimum limits. Another provision of the Act dealing with the proof of financial responsibility when required by the Act incorporated the limits on liability insurance in the definition of motor vehicle liability policy. Those limits were $25,000/50,000. The problem now becomes determining which of these two sets of minimums were within the meaning of the uninsured motorist policy.

To reiterate, the policy provisions state a motor vehicle uninsured ". . . of which there is, in at least the amounts specified by the financial responsibility law . . . no bodily injury liability insurance." "Specified" means mentioned or named in a specific or explicit manner or stated precisely or in detail. Aleksich, 116 Mont. at 138. Looking to the Act prior to amendment, the definition of proof of financial responsibility that set the $10,000/20,000 minimums required a motorist to have ". . . proof of ability to respond in damages . . ." Section 61-6-102(4), MCA. While liability insurance can constitute proof of the ability to respond in damages, other means such as a bond or savings account could be such proof. Thus, the section did not necessarily refer to liability insurance.

On the other hand, section 61-6-103, MCA, which set out the $25,000/50,000 limits, directly referred to motor vehicle liability insurance. The heading of section 61-6-103 read, "Motor vehicle liability policy defined." Subsection (1) of section 61-6-103 states in part: "(1) A 'motor vehicle liability policy' as said term is used in this part shall mean an owner's or operator's policy of liability insurance . . ."

Comparing the two sets of minimum requirements, the language contained in section 61-6-103 setting $25,000/50,000 limits named specifically or explicitly or stated precisely or in detail the requirements for a liability insurance policy under the Act. Section 61-6-102, which requires $10,000/20,000 limits, only referred to liability insurance by inference. Under this analysis, section 61-6-103, setting $25,000/50,000 minimum limits on liability insurance under the Act, "specified" the amount of bodily

-6-

injury liability insurance set out in the Act. Thus, a motorist carrying less than $25,000/50,000 limits on automobile insurance would be uninsured within the meaning of the insurance policy at issue here. Since Barton carried less than that amount insurance, he is an uninsured motorist. Ms. Sunford's estate should therefore be able to collect under the uninsured motorist policies covering her.

Another manner of analyzing the problem reaches the same result. When construing provisions of an insurance policy, any ambiguity should be resolved in favor of the insured. Lindell v. Ruthford (1979), ___ Mont. ____, 598 P.2d 616, 618, 36 St.Rep. 1501, 1505; Atcheson v. Safeco Insurance Company (1974), 165 Mont. 239, 247, 527 P.2d 549. An ambiguity exists in the clause of the policy at issue here. The least amount of liability insurance specified by Montana's financial responsibility law could refer to the $10,000/20,000 limits set out in section 61-6-102, or to the $25,000/50,000 minimums contained in section 61-6-103. Resolving the ambiguity in favor of the insured, the $25,000/ 50,000 limits apply. Under those limits, Barton is an uninsured motorist. Ms. Sunford's estate should therefore recover under her uninsured motorist policies.

Further, other jurisdictions have reached the same result in analogous situations. The California courts have interpreted conflicting provisions of California's statutes in this context. Taylor v. Preferred Risk Mutual Insurance Company (1964), 225 Cal.App.2d 80, 37 Cal.Rptr. 63. In Taylor, a motorist carrying insurance with maximum limits of $5,000 ran into Mrs. Taylor. She obtained a $31,754.48 judgment against the motorist. Mrs. Taylor had an uninsured

motorist policy, the exact terms of which are not set out in the case. She filed an action against her insurance company demanding payment under the uninsured motorist policy. The insurance company denied liability, asserting the motorist who hit Mrs. Taylor was not uninsured.

To resolve the problem presented by the case, the court looked to California statutes dealing with uninsured motorists. At one point, those statutes required a motorist to carry insurance with $10,000 limits for injury to one person. Taylor, 37 Cal.Rptr. at 63. Another section of the code, however, defined uninsured motor vehicle as one not covered by any liability insurance. Taylor, 37 Cal.Rptr. at 64. Presented with these conflicting statutes, the court held an uninsured vehicle was one carrying insurance less than the $10,000 limit. 37 Cal.Rptr. at 64. The court reasoned that this result was proper to carry out legislative intent to give monetary protection to motorists lawfully using the highways who suffer injury through the negligence of others. Taylor, 37 Cal.Rptr. at 64.

In Pickering v. American Employers Insurance Co. (1971), 109 R.I. 143, 282 A.2d 584, the Rhode Island Supreme Court faced a similar construction problem. Plaintiff Pickering, who had uninsured motorist coverage, was injured in a collision with a taxicab. The taxi owner carried insurance with $5,000 limits, the minimum required in Rhode Island for taxicabs. Rhode Island's general financial responsibility law required $10,000 minimum coverage. Ms. Pickering made a claim under her uninsured motorist policy. The insurance company denied the claim, contending the cab owner was insured.

The Rhode Island court applied the higher $10,000 minimum limit from the statutes and found the cab owner

uninsured within the meaning of Pickering's policy. The court reasoned it would be unrealistic to hold that the legislature, after passing legislation permitting the public to obtain uninsured motorist coverage, would deny benefits due thereunder if damages were caused by an underinsured vehicle. Pickering, 282 A.2d at 587.

The results in Pickering and Taylor illustrate that, when confronted with conflicting minimum limits on insurance policies in the context of defining the minimums to determine coverage under uninsured motorist policies, courts from other jurisdictions have chosen the higher limits. Although the two cases involve statutes different from Montana's Act, the rationale of allowing motorists to protect themselves from the uninsured motorist while lawfully using Montana's highways is consistent with legislation passed in this area.

Based on this rationale, the $25,000/50,000 limits contained in section 61-6-103, MCA, should be adopted for defining uninsured motor vehicles. Barton should be found to be uninsured, and Ms. Sunford's estate should be allowed to recover.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

-9-