Gene KEANE and Darlene Keane, Plaintiffs-Appellants-Petitioners,

v.

.AUTO-OWNERS INSURANCE COMPANY, a Foreign Insurance Corporation, and Walter Raymond Moore, Jr., Defendants,

GENERAL CASUALTY COMPANY OF WISCONSIN, a Domestic Insurance Corporation, Defendant-Respondent.

Supreme Court

*No. 88-2404. Argued September 4, 1990.—Decided January 28, 1991.*

(Also reported in 464 N.W.2d 830.)

HEFFERNAN, C.J., and ABRAHAMSON, J., dissent.

For the plaintiffs-appellants-petitioners there were briefs by *Kirk Reese* and *Eckert Law Office,* Rhinelander and oral argument by *Mr. Reese.*

For the defendant-respondent there was a brief by *Thomas N. Harrington, Paul J. Hinkfuss* and *Cook & Franke, S.C.,* Milwaukee and *John O'Melia, Jr.* and

*O'Melia & McEldowney, S.C.,* Rhinelander, of counsel, and oral argument by *Mr. Hinkfuss.*

DAY, J. This is a review of a court of appeals' decision[1] which affirmed the judgment of the circuit court for Oneida County, the Honorable Robert E. Kinney, presiding. The circuit court granted General Casualty Company of Wisconsin's motion for summary judgment and declaratory relief, dismissing the Keanes' complaint with prejudice. The circuit court found that General Casualty, Keane's insurer, was not liable to the Keanes for uninsured motorist benefits for damages resulting from Patrick J. Keane's death, caused by a collision in Wisconsin with a vehicle owned and operated by Walter R. Moore, Jr., a Michigan resident who was insured by Auto-Owners Insurance Company at the time of the accident. The issue is whether Moore's automobile liability policy provided $25,000 of coverage, per person, for bodily injury at the time of the accident, so that Moore was not "uninsured" as that term is defined in General Casualty's policy. We conclude that Moore was not "uninsured" and that General Casualty is not liable to the Keanes for uninsured motorist benefits.

At the time of the accident, Keane had two policies issued by General Casualty Company of Wisconsin. One policy covered the car in the accident. The other policy covered another vehicle Keane owned. Both vehicles were garaged in Wisconsin. Both policies contained $60,000 of uninsured motorist coverage.

The Keane policy provided for uninsured motorist coverage if damage caused by another vehicle having coverage for bodily injury was less than the amount

---

[1] *Keane v. Auto-Owners Ins. Co.,* 151 Wis. 2d 686, 445 N.W.2d 715 (Ct. App. 1989).

541

required by the Wisconsin statutes. Keane's policy defined an uninsured vehicle as:

a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged.

There is no claim that Keane's auto was not principally garaged in Wisconsin. It is also agreed that the minimum limit for bodily injury liability under sec. 344.15(1), Stats. 1987–88,[2] of Wisconsin's financial responsibility law is $25,000 for one person.

Moore's policy, written in Michigan, had only a $20,000 bodily injury limit for one person. However, the Moore policy with Auto-Owners also had an extraterritorial clause which provided:

20. FINANCIAL RESPONSIBILITY LAWS; COMPULSORY INSURANCE LAWS. Such insur-

---

[2] **344.15 Requirements as to policy or bond. (1)** No policy or bond is effective under s. 344.14 unless issued by an insurer authorized to do an automobile liability or surety business in this state, except as provided in sub. (2), or unless the policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than $25,000 because of bodily injury to or death of one person in any one accident and, subject to that limit for one person, to a limit of not less than $50,000 because of bodily injury to or death of 2 or more persons in any one accident and, if the accident has resulted in injury to or destruction of property, to a limit of not less than $10,000 because of injury to or destruction of property of others in any one accident.

ance as is afforded by this policy under Coverages A and B [A is bodily injury, B is property damage liability] *shall comply with the provisions of the motor vehicle financial responsibility law of any state or province to the extent of the coverage and limits of liability required by such law.* Where a motor vehicle compulsory insurance law or any similar law requires a non-resident to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by this policy, the limits of the Company's liability and the kinds of coverage afforded shall be as set forth in such law. (Emphasis added.)

We conclude that the extraterritorial clause increased Moore's liability limit to $25,000. Therefore, Moore was not uninsured, and General Casualty is not liable to the Keanes for uninsured motorist benefits.

The facts of the case are undisputed. On February 4, 1988, Keane was driving north on Highway 17 in Oneida County, Wisconsin. Moore was driving south on Highway 17 at the same time. The Keane vehicle and the Moore vehicle collided in Keane's lane, resulting in Keane's death. Gene and Darlene Keane, Patrick Keane's parents, brought a wrongful death action against Moore, pursuant to section 895.04(1), Stats. 1987–88[3] for $2,555,000 in damages. Moore does not dispute the claim that the Keanes sustained damages substantially greater than $20,000. Auto-Owners determined that sections 344.33(2),[4] and 344.14(2)(a)[5] Stats.

---

[3] **895.04 Plaintiff in wrongful death action. (1)** An action for wrongful death may be brought by the personal representative of the deceased person or by the person to whom the amount recovered belongs.

[4] **344.33 "Motor vehicle liability policy" defined . . ..** **(2)** MOTOR VEHICLE LIABILITY POLICY. A motor vehicle

1987–88 of Wisconsin's financial responsibility law requires $25,000 of liability coverage for bodily injury to one person. Auto-Owners concluded their extraterritorial clause increased Moore's policy limit to $25,000 for the accident with Keane and tendered this amount to the Keanes.

The Keanes rejected the $25,000. They claim that Wisconsin's financial responsibility law does not *require* $25,000 of coverage. In fact, they argue, Wisconsin does not require liability insurance of any limit. The Keanes contend that Section 344.33(2), Stats., which Auto-Owners relied on in increasing its liability limit, only requires $25,000 of coverage for proof of financial responsibility for the future.

The Keanes claim that the $25,000 limit is only required if Moore had already been in an accident and had a judgment in excess of $500 against him or as a condition precedent to reinstatement of an operating

---

policy of liability insurance shall insure the person named therein using any motor vehicle with the express or implied permission of the owner, against loss from the liability imposed by law for damages arising out of the maintenance or use of the motor vehicle within the United States of America or the Dominion of Canada, subject to the limits exclusive of interest and costs, with respect to each such motor vehicle as follows: $25,000 because of bodily injury to or death of one person in any one accident and, subject to such limit for one person, $50,000 because of bodily injury to or death of 2 or more persons in any one accident, and $10,000 because of injury to or destruction of property of others in any one accident.

[5] 344.14 Suspension for failure to deposit security; impoundment of vehicle; exceptions . . .. (2) Subsections (1) and (1m) do not apply:

(a) To the owner of a motor vehicle involved in an accident if the owner had in effect at the time of the accident a policy or bond with respect to such motor vehicle, which policy or bond complies with the requirement of s. 344.15.

privilege revoked under ch. 343. Sections 344.24[6] and 344.29, Stats. 1987-88.[7] In order to drive in Wisconsin again, Moore would have to pay the judgment and show proof of financial responsibility for the future. Section 344.26(1), Stats.[8] If his motor vehicle liability policy were to be used as proof of financial responsibility for the future, it would have to provide $25,000 of coverage, per person, for bodily injury or death. Section 344.33(2), Stats. The Keanes contend that only then does the Auto-Owners' extraterritorial clause apply.

Additionally, the Keanes argue that sec. 344.14(2)(a), Stats., which Auto-Owners also relied on, applies only after an accident and after a motorist is

[6] **344.24 Applicability of sections relating to proof of financial responsibility for the future.** Sections 344.29 to 344.41 are applicable in all cases in which a person is required to deposit proof of financial responsibility for the future, including those cases in which a person is required to deposit proof of financial responsibility for the future under ss. 344.25 to 344.27 and those cases in which the deposit of proof of financial responsibility for the future is a condition precedent to reinstatement of an operating privilege revoked pursuant to ch. 343.

[7] **344.29 Proof of financial responsibility for the future required.** Proof of financial responsibility for the future shall be furnished by any person required to give such proof under ss. 344.25 to 344.27 and in those cases in which the deposit of proof of financial responsibility for the future is a condition precedent to reinstatement of an operating privilege revoked under ch. 343.

[8] **344.26 Revocation to continue until judgment paid and proof of financial responsibility given. (1)** Subject to the exceptions stated in ss. 344.25(2) and 344.27(2), any operating privilege of registration revoked pursuant to s. 344.25 shall remain revoked until every judgment mentioned in s. 344.25 is stayed, satisfied or discharged and, unless 3 years have elapsed since the date of entry of the judgment which was the cause for revocation, until the person whose operating privilege and registration was revoked furnishes proof of financial responsibility for the future and maintains such proof at all times during such 3-year period when the operating privilege or registration is in effect.

required to post a bond or show proof of $25,000 of coverage. The Keanes claim that since the Department of Transportation has not required Moore to show proof of financial responsibility for the future, the extraterritorial clause in his policy has not gone into effect. They contend Moore still had only $20,000 of coverage at the time of the accident.

The Keanes claim that the minimum liability limit for bodily injury "specified" by Wisconsin's financial responsibility law is $25,000. They direct the court to Chapter 344 of the Wisconsin Statutes, but do not cite a specific section. The Keanes argue that since Wisconsin's financial responsibility law does not require ownership of liability insurance with a $25,000 limit, Moore had only $20,000 of coverage at the time of the accident. But since Wisconsin's financial responsibility law "specifies" the $25,000 limit for a bond or policy which applies at the time of the accident, and Moore does not have this limit in his policy, he is "uninsured."

On this basis, the Keanes argue that they should collect $120,000 of uninsured motorist benefits from General Casualty; $60,000 from each of Keane's insured automobiles. *Welch v. State Farm Mut. Auto Ins. Co.,* 122 Wis. 2d 172, 178, 361 N.W.2d 680 (1985). General Casualty argues that if Moore is held to be uninsured, its liability should be limited to the difference between the tortfeasor's limit and the statutory minimum of $25,000 prescribed by section 632.32(4)(a), Stats. 1987–88.[9]

[9]Section 632.32(4)(a) provides:

**632.32 Provisions of motor vehicle Insurance policies . . ..**
**(4)** REQUIRED UNINSURED MOTORIST AND MEDICAL PAYMENTS COVERAGES. Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person

Therefore, General Casualty should only have to pay $5,000 (i.e., the difference between $20,000 and $25,000). Because we hold that Moore was not uninsured, we do not reach either of these questions.

■

Auto-Owners liability limit depends on the meaning of its extraterritorial clause. The interpretation of an insurance policy is a question of law. *Blackhawk Prod. v. Chicago Ins.,* 144 Wis. 2d 68, 77, 423 N.W.2d 521 (1988); *Kraemer Bros. v. United States Fire Ins. Co.,* 89 Wis. 2d 555, 562, 278 N.W.2d 857, 869 (1979). This court owes no deference to the circuit court's interpretation of the policy. *Blackhawk,* 144 Wis. 2d at 77.

Specifically, "the extent of coverage and limits of liability required" by Wisconsin's financial responsibility law controls Auto-Owners limit of liability to the Keanes. Wisconsin's financial responsibility law is found in Chapter 344 of the Wisconsin Statutes. The law is divided into two parts. The first part is Security for Past Accidents.[10] *See* secs. 344.12 to 344.22, Stats. 1987–88. Its purpose is to provide security for the payment of damages for past accidents. *Pinkerton v. United Services Automobile Assoc.,* 5 Wis. 2d 54, 56, 92 N.W.2d 256

arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:

(a) Uninsured motorist. 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident. The insurer may increase the coverage limits provided under this paragraph up to the bodily injury liability limits provided in the policy . . ..

[10]Security for Past Accidents is formerly known as the Safety Responsibility Law. *See Laughnan v. Aetna Casualty & Surety Co.,* 1 Wis. 2d 113, 127, 83 N.W.2d 747 (1957).

(1958). If security is not provided, the state may revoke the motorist's driving privileges. Section 344.13(3).[11] The second part of the law is Proof of Financial Responsibility for the Future.[12] *See* secs. 344.24 to 344.41. Its purpose is to provide proof of financial responsibility for future driving privileges in Wisconsin as a condition precedent to reinstatement of a revoked operating privilege. Section 344.24, Stats.

The Keanes argue that Wisconsin's Financial Responsibility Act only applies in a prospective manner. That is, Moore's limit of liability will only increase after an accident because the law does not apply at the time of the accident. They cite several Wisconsin cases in support of this proposition.

In *Havlik,* 272 Wis. 2d 71, 74 N.W.2d 798 (1956), this court upheld an exclusion clause in an automobile liability policy stating the policy does not apply to any bodily injury suffered by the insured. The insured then attempted to show that a policy containing such an exclusion is ambiguous when the financial responsibility

[11] **344.13 Secretary to determine amount of security required following accident and to give notice thereof . . ..** (3) The secretary within 90 days after receipt of a report of an accident of the type specified in s. 344.12 and upon determining the amount of security to be required of any person involved in such accident or to be required of the owner of any vehicle involved in such accident, shall give at least 10 days' written notice to every such person of the amount of security required to be deposited by the person. The notice also shall state that an order of suspension will be made as provided in s. 344.14, unless within such time security is deposited as required by the notice. The order of suspension may be made a part of the notice, with a provision that it will take effect on the date specified in this subsection unless security is deposited prior to that date.

[12] Proof of Financial Responsibility for the Future is formerly known as the Financial Responsibility Law. *See Havlik v. Bittner,* 272 Wis. 2d 71, 74, 74 N.W.2d 798 (1956).

law is read into the policy. *Id.* at 74. The policy contained a clause stating that it "shall comply with . . . the motor vehicle Financial Responsibility Law of any state or province . . . to the extent of the coverage and limits of liability required by such law." *Id.* at 73. Section 85.09(17), Stats. 1955,[13] the financial responsibility law in *Havlik,* referred to furnishing proof of financial responsibility *for the future. Id.* at 74. But since the insured had not previously been in an accident and was not required to show proof of financial responsibility for the future, the policy did not have to conform to the financial responsibility law. *Id.*

The financial responsibility law applied prospectively in *Havlik* because, given the clause's literal meaning, the policy had to comply with the "financial responsibility law." At the time *Havlik* was decided, the "financial responsibility law" only referred to furnishing proof of financial responsibility for the future. Section 85.09(17), Stats. 1955. Section 85.09(17), was repealed in 1957 to create Chapter 344, which contains Security for

---

[13] **85.09 VEHICLES AND TRAFFIC** . . . FINANCIAL RESPONSIBILITY LAW . . . (17) PROOF REQUIRED UPON CERTAIN CONVICTIONS. (a) Whenever the commissioner, under any law of this state, suspends or revokes the license of any person upon receiving record of a conviction or a forfeiture of bail, the commissioner shall also suspend the registration for all motor vehicles registered in the name of such person, except that he shall not suspend such registration, unless otherwise required by law, if such person has previously given or shall immediately give and thereafter maintain proof of financial responsibility with respect to all motor vehicles registered by such person.

(b) Whenever the commissioner suspends or revokes a nonresident's operating privilege by reason of a conviction or forfeiture of bail, such privilege shall remain so suspended or revoked unless such person shall have previously given or shall immediately give and thereafter maintain proof of financial responsibility.

Past Accidents and Proof of Financial Responsibility for the Future. Chapter 260, Laws of 1957.

In a similar case, *Knight v. Heritage Mut. Ins. Co.,* 71 Wis. 2d 821, 239 N.W.2d 348 (1976), this court held that a family exclusion clause in a motor vehicle liability policy issued in Illinois to an Illinois resident was effective in Wisconsin. In an attempt to invalidate the exclusion, however, the petitioner, Heritage Mutual, noted the following clause in the policy:

> *When certified as proof of future financial responsibility* under any motor vehicle financial responsibility law . . . this policy shall comply with such law if applicable, to the extent of the coverage and limits required thereby . . ..

*Id.* at 825.

Heritage Mutual argued that when the motor vehicle financial responsibility law was read into the policy, the family exclusion clause became ineffective.[14] *Id.* However, the court found that the policy in *Knight* "did not involve future financial responsibility." *Id.* at 826. Therefore, the "policy did not have to conform to Wisconsin law." *Id.*

The policies in *Havlik* and *Knight* specifically referred to compliance with laws of financial responsibility for the future. The policy in *Havlik* referred to the "financial responsibility law" which, at the time *Havlik* was decided, concerned furnishing proof of financial responsibility for the future. Section 85.09(17), Stats. 1955. The policy in *Knight* referred to certification of a policy as proof of "future financial responsibility." 71 Wis. 2d at 825.

---

[14]Under section 344.32(1)(b), Stats. 1975, an insurance policy certified as proof of financial responsibility for the future was prohibited from containing a family exclusion clause.

The insurance clause in the present case does not refer to proof of financial responsibility for the future or certification for such proof. It merely refers to "the financial responsibility law" and that which is required by such law. Therefore, the policy must meet the coverage and limits of liability required by Wisconsin's financial responsibility law.

The first part of the financial responsibility law, Security for Past Accidents, applies to accidents which result in bodily injury or death, or property damage greater than $500. Section 344.12, Stats. 1987–1988.[15] Once this type of accident occurs, the Department of Transportation examines the accident report to determine the amount of security needed to satisfy a possible judgment for damages. Section 344.13(1), Stats. Within ninety days after receiving the accident report and determining the amount of the security deposit, the Department shall notify each person from whom a security deposit is required.[16] Section 344.13(3). An order of suspension for failure to make the security deposit is to be incorporated into the notice. *Id.* If the security is not deposited in the correct amount and within the time specified in the notice, the order for suspension will take effect. Section 344.14(1), Stats.[17]

---

[15] **344.12 Applicability of provisions relating to deposit of security for past accidents.** Subject to the exceptions contained in s. 344.14, the provisions of this chapter requiring deposit of security and requiring suspension for failure to deposit security apply to the operator and owner of every motor vehicle which is in any manner involved in an accident in this state which has resulted in bodily injury to or death of any person or damage to property of any other person in excess of $500.

[16]The ninety day time limit is directory, not mandatory. *Warner v. Department of Transp.,* 102 Wis. 2d 232, 236, 306 N.W.2d 266 (Ct. App. 1981).

[17] **344.14 Suspension for failure to deposit security;**

An individual who has an insurance policy or bond in effect at the time of the accident does not have to file a security deposit. Section 344.14(2), Stats. However, for vehicles registered in Wisconsin, the policy or bond must either be issued by an insurer "authorized to do an automobile liability or surety business in this state," or the policy or bond must be subject to a $25,000 limit, per person, for bodily injury or death. Section 344.15(1), Stats.

For vehicles that are not registered in Wisconsin, the policy or bond must meet the same $25,000 limit, or it must meet the liability limit of the equivalent law in the state in which it was issued. Section 344.15(2)(a), Stats.[18] This limit must be sufficient to cover the estimated damages of the accident. *Id.*

impoundment of vehicle; exceptions. (1) If a person who was given notice pursuant to s. 344.13(3) fails to deposit security in the amount and by the time specified in the notice, the secretary shall forthwith suspend the person's operating privilege if the person was the operator of a motor vehicle involved in the accident and all the person's registrations if the person was the owner of a motor vehicle involved in the accident unless the person furnishes proof satisfactory to the secretary that the person comes within one of the exceptions set forth in sub. (2). If the owner and operator are separate persons, only one of them need deposit security or the 2 persons may cooperate in depositing security. Upon request of the owner or operator in question, the secretary may postpone the effective date of a suspension under this section not to exceed 20 days.

[18] 344.15 Requirements as to policy or bond . . .. (2) A policy or bond with respect to a vehicle which was not registered in this state or was registered elsewhere at the time of the effective date of the policy or bond or the most recent renewal thereof may be effective under s. 344.14 even though not issued by an insurer authorized to do an automobile liability or surety business in this state if the following conditions are complied with:

(a) The policy or bond either meets the liability limits specified in sub. (1) or meets the liability limits of the equivalent law of the state in which issued and such limits are in the judgment of the secretary,

552

Since Moore was in an accident resulting in Keane's death, he is within the purview of Security for Past Accidents. Section 344.12, Stats. Moore's policy, if used as security for a past accident, must either contain the $25,000 limit, or the $20,000 limit in the policy must be sufficient to cover the Keanes' damages. Section 344.15(2)(a), Stats. Since both parties agree that the damages are greater than $20,000, Moore's policy must provide the $25,000 limit if it is used to satisfy the Security for Past Accidents section of Wisconsin's financial responsibility law.

The other section of the financial responsibility law, Proof of Financial Responsibility for the Future, applies in all cases where a person is required to furnish such proof to prevent license revocation. Section 344.29, Stats. This section of the law takes effect after a judgment for damages in excess of $500 for a motor vehicle accident has been entered against the driver or as "a condition precedent to reinstatement of an operating privilege revoked under ch. 343." Sections 344.25 to 344.29, Stats. However, since the record does not show that such a judgment has been entered against Moore or that Moore has had his license revoked under ch. 343, we need not be concerned with financial responsibility for the future. The policy does not have to conform to the law before the law applies to the insured.

The Keanes cite *Schanche v. Estate of Alvarez,* 368 F. Supp. 543 (E.D. Wis. 1973) in support of their contention that Wisconsin does not require any motor vehicle liability insurance or any limits of liability. Since no coverage or limits are required, they argue, the extraterritorial clause in Auto-Owners' policy does not go into effect to raise Moore's limits of liability.

adequate to cover any damage or injury involved in the accident in question.

553

In *Schanche,* the court refused to increase an Oregon motorist's liability coverage to the limit specified in section 344.15(1), Stats. (1973). 368 F. Supp. at 544. In 1973, when *Schanche* was decided, the Wisconsin liability limit for bodily injury or death was $15,000 per person. *Schanche,* 369 F. Supp. at 544. Mr. Alvarez, the Oregon motorist, had only $10,000 of coverage per person. *Id.* The court stated that the out-of-state policy provided, " 'policy terms which conflict with Wisconsin Statutes are amended to conform with such statutes.' " *Id.* The court held that there was no "conflict" because section 344.15(1), Stats., did not *require* drivers to carry automobile insurance. *Id.* Moreover, section 344.15(2), 1973, exempted policies on out-of-state vehicles from complying with Wisconsin law if those policies, among other things, met the minimum liability limit of the state of issuance. *Id.* The Oregon motorist's policy met this limit. *Id.*

As correctly stated in *Schanche,* Wisconsin does not *require* drivers to carry automobile insurance. *Id.* Ours is not a compulsory insurance state. But for policies issued, Chapter 632, Subchapter IV, of the Wisconsin Statutes governs automobile and motor vehicle insurance policy requirements; and "[i]n Wisconsin, liability coverage currently cannot be issued for less than $25,000. Section 344.33, Stats." *Wood v. American Fam. Mut. Ins.,* 148 Wis. 2d 639, 653, 436 N.W.2d 594, 600 (1989).

Additionally, section 344.15, Stats., requires $25,000 of coverage for bodily injury or death when that coverage is used as security for a past accident. The case before us is one where the motorist must provide security for a past accident. Since the extraterritorial clause in Auto-Owners' policy is to comply with that which is required by Wisconsin's financial responsibility law, we conclude

that Moore's bodily injury liability limit for the accident with Keane is $25,000.

If we were to apply the financial responsibility law prospectively, as the Keanes contend, the extraterritorial clause would go into effect only if Moore had already been in an accident. Consequently, the victim's only recourse of recovery would be to seek to satisfy the judgment from the out-of-state motorist, or to seek uninsured motorist benefits from its own insurer, providing the victim even has automobile liability insurance. *See* G. Couch, *Couch on Insurance* 2d section 45:721 (Rev. ed. 1981).

The higher limit of liability must apply, not only from the standpoint of the victim, but also from the standpoint of a reasonable insured. The words of an insurance policy are to be construed in accordance with how a reasonable insured would interpret the policy. *Kremers-Urban Co. v. American Employers Ins.,* 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). We find that a reasonable insured, owning a policy containing the extraterritorial clause that appears in this case, would expect the policy to comply with the financial responsibility law of any other state or province. That is, if the financial responsibility law requires a minimum limit of liability for a policy used as security for a past accident, the insured's policy meets that limit.

A reasonable insured under Moore's policy would expect that its extraterritorial clause meant that if he was involved in an accident in Wisconsin causing damages in excess of $20,000, that Auto-Owners would provide coverage of $25,000 and that his license would not therefore, be revoked. That is what Auto-Owners did.

General Casualty cites as compelling *Amick v. Liberty Mut. Ins. Co.,* 455 A.2d 793 (R.I. 1983). In that case,

the Rhode Island Supreme Court held that an extraterritorial clause extended limits of an automobile liability policy to $25,000, the minimum limit of liability required by Rhode Island's Motor Vehicle Safety Responsibility Act. *Id.* at 796. Section 31–31–1 to 31–31–22 of the Act applied to security for a past accident, just as sections 344.12 to 344.22, Stats. do. *See Amick* at 795. The extraterritorial clause in *Amick* provided "the required higher coverage" of other states and provinces having a higher limit of liability for bodily injury or property damage than the insured purchased. *Id.* at 794. Rhode Island does not require automobile liability insurance as a condition precedent to the operation of a motor vehicle in that state. *Id.* at 795.

The court in *Amick* reasoned that the insured "purchased this optional coverage to be protected from laws that would require him, if uninsured, either to post security in case of an accident or to risk suspension of his driving privileges. This is precisely the protection that the extraterritorial-coverage clause purports to provide." *Id.* at 796.

The record in the present case does not reveal whether the extraterritorial clause in Auto-Owners' policy was optional or mandatory or whether Moore paid a higher premium to have it included in his policy. However, we cannot disregard the common and ordinary meaning of the clause. The language of an insurance policy is to be given the common ordinary meaning it would have in the mind of a reasonable insured. *Kremers-Urban Co.,* 119 Wis. 2d at 735. The extraterritorial clause is meant to comply with any coverage or limits of liability required by a state's financial responsibility law. Our state requires a $25,000 limit of liability for bodily injury or death for a policy used as security for a past

accident. Section 344.15, Stats. We find that the extra-territorial clause increases Moore's liability limit to $25,000, the minimum limit of liability for bodily injury or death required by section 344.15. Therefore, Moore was not "uninsured" as that term was defined in Keane's policy with General Casualty. We therefore affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

CHIEF JUSTICE HEFFERNAN (dissenting). Because Wisconsin's financial responsibility law clearly and unequivocally did not require any amount of liability coverage "at the time of the accident," Keane is entitled to $120,000 of uninsured motorist (UM) coverage under the express terms of the General Casualty Company policies. Accordingly, I dissent.

It is clear that, under Keane's policies, Moore's liability limits must be determined *at the time of the accident* with Keane. *See* majority op. at 542. The majority acknowledges that Wisconsin "is not a compulsory insurance state." *See id.* at 554. What it fails to recognize is that Wisconsin's financial responsibility law is entirely "prospective," *i.e.,* it does not require anything of motorists or insurers prior to or at the time of an accident.[1] The vast majority of courts and commentators recognize that such financial responsibility acts are "second bite" statutes which are not triggered until after a motorist's first accident.[2]

---

[1]*See Schanche v. Estate of Alvarez,* 368 F. Supp. 543, 544 (E.D. Wis. 1973) ("Section 344.15 is part of the state's financial responsibility law, and it is directly applicable only after an accident.").

[2]*See* Annotation, *Policy Provision Extending Coverage to Comply with Financial Responsibility Act as Applicable to*

While the secretary of Wisconsin's Department of Transportation (DOT) may subsequently require Moore to post some kind of security for his "past accident" with Keane or risk losing his driving privileges in this state, such a discretionary decision can only be made sometime after, and not "at the time of," the accident. *See* secs. 344.13 and 344.14, Stats. 1987–88. Such prospectively required security need not be an insurance policy, moreover, but may, for example, be in the form of a bond. *See* sec. 344.15, Stats. There is no evidence in the record, in any event, that the Secretary of DOT has required Moore to post any security, and whether or not it does so after the accident is of no concern to us here.

Not only does Wisconsin not require drivers to carry any insurance, but there is clearly no statutory provision mandating that insurance issued in Wisconsin be of any certain amount. This court's prior dicta in *Wood v. American Family Mut. Ins. Co.,* 148 Wis. 2d 639, 653, 436 N.W.2d 594, 600 (1989), that "[i]n Wisconsin, liability coverage currently cannot be issued for less than $25,000" has no foundation in either statute or case law.

Section 344.33, Stats., which *Wood* and the majority here cite as statutory support *(see* majority op. at 554, only sets forth that policies used for certification of proof of financial responsibility for the future must have $25,000 minimum limits. It neither applies to policies in

---

*Insured's First Accident,* 8 A.L.R.3d 388 (1966 and 1990 Supp.); 12A *Couch on Insurance* 2d, sec. 45:721 at 352–361 (rev. ed. 1981), which states:

> The basic problem with this type of statute is that the motorist is entitled to one "free" accident. These laws do not apply retroactively to the first accident . . . .. Such an act provides little consolation to the victim of the first accident whose only recourse is to seek to satisfy the judgment entered against the irresponsible motorist [or] attempt to recover from his own uninsured motorist carrier . . . ..

any context outside of this certification process under the Act nor mandates in any way that insurers must certify their insureds.[3] Chapter 344 does not attempt to regulate insurers but rather *motorists* who are involved in auto accidents. Chapter 344 can be sharply contrasted to ch. 632, for example, which directly regulates insurers by setting forth various required and permissive provisions and coverages.

Lacking statutory support, it would be an impermissible act of judicial legislation for this court to require that insurance policies issued in Wisconsin provide a minimum of $25,000 of coverage. Moore's policy was, in any event, issued in Michigan, not Wisconsin, and accordingly cannot be subject to any of our statutory or judicial requirements concerning minimum liability coverage upon issuance. No matter how you look at it, Moore was not "required" to have $25,000 of liability coverage "at the time of [his] accident" with Keane, and accordingly the Michigan policy's $20,000 limits did not need to increase to comply with any required coverage.

The majority's assertion that a reasonable insured in Moore's position would expect his or her policy limits to increase to the $25,000 amount specified in Wisconsin's Act, while having superficial appeal, is substantially irrelevant.[4] The "extraterritorial" clause in Moore's policy unambiguously looks to the "coverage and limits of

---

[3]General Casualty's own insurance policy demonstrates the voluntary nature of certification under the Act:

> Financial Responsibility Required. *If we certify this policy* as proof of financial responsibility for the future under any financial responsibility law . . .. (Emphasis supplied.)

[4]*Cf. Oleson v. Farmers Ins. Group*, 185 Mont. 164, 605 P.2d 166 (1980) (distinguishing between the use of terms, "specified" and "required," in UM provision referring to financial responsibility act).

liability *required*" (emphasis supplied) by our financial responsibility law.[5] While having a policy with $25,000 of liability coverage may be the simplest way of responding to a DOT request for security following an accident, the fact remains that such insurance coverage is not required prior to, at the time of, nor, for that matter, any time after an accident. *See* sec. 344.14, Stats. Finally, it would not contravene public policy to properly interpret the plain language of a Michigan insurance policy so as to allow a Wisconsin plaintiff to collect UM benefits under his policies.[6]

I respectfully dissent and would reverse the decision of the court of appeals.

I am authorized to state that Justice Shirley S. Abrahamson joins in this dissent.

[5]*See* 12A *Couch on Insurance* 2d sec. 45:764 at 419:

> The provision that the policy shall comply with the financial responsibility act of the state where applicable does not create an ambiguity which is to be resolved against the insurer . . ..

[6]It should be noted that in *Amick v. Liberty Mut. Ins. Co.,* 455 A.2d 793 (R.I. 1983), to the contrary, the plaintiff was a Rhode Island resident who wanted the court to increase the liability limits under an "extraterritorial" clause for his benefit.