WEST BEND MUTUAL INS. CO., Plaintiff-Appellant,†

v.

Stacy L. STEGNER, Defendant,

PROGRESSIVE CASUALTY CO., Defendant-Respondent.

Court of Appeals

*No. 99–1859. Submitted on briefs January 11, 2000.—Decided March 16, 2000.*

2000 WI App 91

(Also reported in 610 N.W.2d 150.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John C. Possi* of *Mueller, Goss & Possi, S.C.,* Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Rick E. Hills* of *Hills & Hicks, S.C.,* Brookfield.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. West Bend Mutual Insurance Company appeals a judgment dismissing its subrogation claim against Progressive Casualty Company. West Bend's insured died as a result of an automobile accident involving Progressive's insured, and West Bend sued to recover a portion of the benefits it paid to its insured's estate. West Bend claims the trial court erred in dismissing its claim against Progressive because, under the Florida "personal injury protection" insurance policy that Progressive issued, Progressive must provide the amount of bodily injury liability coverage required by Wisconsin's financial responsibility law. We conclude, however, that because Wisconsin does not compel drivers to carry bodily injury liability coverage, and because the Progressive policy provided no bodily injury liability coverage to its insured, Progressive incurred no liability under its policy to West Bend. Accordingly, we affirm the judgment dismissing Progressive from this litigation.

## BACKGROUND

¶ 2. Mary Rasmussen died from injuries she sustained when her vehicle collided with one owned and operated by Stacy Stegner. Rasmussen's insurer, West Bend Mutual Insurance Company, paid benefits under its policy to Rasmussen's estate. West Bend then filed this action to recover its outlay from Stacy Stegner and her insurer, Progressive Casualty Company.[1]

¶ 3. Stegner was living in Florida at the time she purchased automobile insurance from Progressive. The policy complied with a Florida law requiring motor vehicle owners to purchase a "personal injury protection" plan, which covers the operator and occupants of the insured vehicle, as well as pedestrians, for bodily injuries sustained in an automobile accident.[2] *See* FLA. STAT. ANN. § 627.736(1) (West 1996). The policy Stegner purchased from Progressive also included property damage liability coverage, as well as comprehensive and collision insurance, and it included provisions for third-party bodily injury liability coverage, which would have been in force if Stegner had paid premiums for that type of coverage. Florida law in effect at the time did not require motor vehicle owners to purchase liability coverage for bodily injuries sustained by occupants of other vehicles, and Stegner chose not to purchase third-party bodily injury liability coverage.

---

[1] Stacy Stegner "[took] no position" on the coverage issue in the trial court, and she is not a party to this appeal.

[2] The benefits payable under the policy are limited to a percentage of hospital and medical expenses, a percentage of lost earnings, and a death benefit, up to a policy limit of $10,000. Progressive describes the "personal injury protection" coverage as being "most analogous to Medical Payments coverage in Wisconsin."

¶ 4. Stegner's policy from Progressive, however, contains an "extraterritorial" clause, which potentially provides coverage for bodily injuries incurred by third parties, under certain circumstances, when an insured vehicle is involved in an accident outside of Florida. The provisions, captioned "Out-of-State Coverage," read as follows:

> If an accident to which this policy applies occurs in any state . . . other than the one in which a covered vehicle is principally garaged, and the state . . . has:
>
> 1. a financial responsibility or similar law requiring limits of liability for bodily injury . . . higher than the Limits shown on the Declarations Page, this policy will provide the higher limit; or
>
> 2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses a vehicle in that state or province, this policy will provide:
>
> a. the required minimum amounts and types of coverage; or
>
> b. any higher limit you have elected, provided you have paid the premium for higher limits.

¶ 5. West Bend alleged in its complaint that, under this policy language and the applicable Wisconsin statutes, Progressive is liable to West Bend for at least $25,000 of the benefits it paid to Rasmussen's estate. Progressive denied all liability and moved the circuit court to enter a judgment declaring that Progressive's policy did not provide bodily injury liability coverage for the accident which resulted in Rasmussen's death. The court granted Progressive's motion

and dismissed Progressive from the lawsuit. West Bend appeals.

## ANALYSIS

¶ 6. To resolve the present dispute between these insurers, we must interpret the extraterritorial clause in the Progressive policy, as well as the Wisconsin statutes implicated by the policy language. Both interpretations are questions of law which we decide de novo. *See Ledman v. State Farm Mut. Auto. Ins. Co.*, 230 Wis. 2d 56, 61, 601 N.W.2d 312 (1999); *State v. Setagord*, 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997).

¶ 7. There is no dispute that had the fatal accident occurred in Florida, Progressive would have incurred no liability for Rasmussen's death under its policy with Stegner. The result for an accident occurring in Wisconsin is governed by the policy's extraterritorial clause, quoted above, which describes two circumstances under which Progressive may incur financial liability for bodily injuries sustained by a third party in a non-Florida accident involving the insured vehicle. The second circumstance does not apply because Wisconsin does not compel drivers, resident or non-resident, to maintain any kind or amount of automobile insurance. *See Keane v. Auto-Owners Ins. Co.*, 159 Wis. 2d 539, 554, 464 N.W.2d 830 (1991) ("Wisconsin does not require drivers to carry automobile insurance. . . . Ours is not a compulsory insurance state."). Thus, West Bend cannot recover under the "compulsory insurance" provision of the policy's extraterritorial clause, and we do not understand West Bend to argue otherwise.

¶ 8. Thus, if Progressive faces exposure for bodily injury liability resulting from the Stegner-Rasmussen collision, it must derive from the first circumstance described in the policy's extraterritorial clause. Under that provision, in order for West Bend to prevail, there must exist in Wisconsin "a financial responsibility or similar law requiring limits of liability for bodily injury . . . higher than the Limits shown on the Declarations Page" of the Progressive policy. Wisconsin's financial responsibility law is set forth in WIS. STAT. ch. 344 (1997–98),[3] which provides for a minimum limit of "$25,000 because of bodily injury to or death of one person in any one accident. . . ." WIS. STAT. §§ 344.15(1) and 344.33(2).[4] West Bend argues that Progressive is liable under the "financial responsibility" provision of the policy because Wisconsin's financial responsibility law establishes a minimum amount of bodily injury liability coverage ($25,000) which exceeds the "zero" limit for this coverage in Stegner's policy. We disagree.

¶ 9. West Bend's argument assumes that the extraterritorial financial responsibility provision in the policy applies regardless of whether the policy-holder has elected to obtain bodily injury liability coverage under the policy. We agree with Progressive, however, that (1) its policy can reasonably be read as providing

[3] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

[4] As we have noted, there is no general requirement in Wisconsin that drivers maintain any amount of liability insurance. The provisions of ch. 344 are triggered only after a driver has been involved in an accident or has had his or her operating privilege suspended or revoked. For a discussion of the "past accident" and "for the future" aspects of Wisconsin's financial responsibility law, see *Keane v. Auto-Owners Insurance Co.*, 159 Wis. 2d 539, 547–53, 464 N.W.2d 830 (1991).

bodily injury liability coverage only when the insured has elected that coverage and paid premiums for it, and (2) the extraterritorial financial responsibility provision in the policy comes into play only if bodily injury liability coverage is in place. The policy form issued to Stegner includes language that describes and would govern any bodily injury liability coverage she might have elected to purchase, but the policy makes clear that the liability coverage is in place only "if you pay a premium for bodily injury liability coverage." The financial responsibility provision in the extraterritorial clause specifically refers to bodily injury liability coverage, and it provides that the limit for this coverage "shown on the Declarations Page" is increased as necessary to meet the minimum "financial responsibility" limit imposed by laws similar to WIS. STAT. ch. 344. Because Stegner did *not* purchase bodily injury liability coverage, however, there is no coverage on which the extraterritorial financial responsibility provision can operate.

¶ 10. The lack of any amount of bodily injury liability coverage in Stegner's policy from Progressive also distinguishes it from the policy at issue in *Keane v. Auto-Owners Insurance Co.*, 159 Wis. 2d 539, 464 N.W.2d 830 (1991), a case on which West Bend relies. The Michigan driver in *Keane*, like Stegner, was involved in a Wisconsin accident in which a Wisconsin driver was killed. Auto-Owners Insurance Company insured the Michigan driver's vehicle, and the policy provided bodily injury liability coverage to a limit of $20,000. *See Keane*, 159 Wis. 2d at 542. The policy also contained an extraterritorial clause which provided that any bodily injury liability coverage "afforded by this policy . . . shall comply with the provisions of the motor vehicle financial responsibility law of any state

or province to the extent of the coverage and limits of liability required by such law." *Id.* at 543. At issue in *Keane* was whether the Auto-Owners policy's extraterritorial clause operated to raise the policy's $20,000 bodily injury liability limit to $25,000 in order to comply with Wisconsin's financial responsibility law.[5] The supreme court concluded that the policy language under review did precisely that. *See id.* at 556–57.

¶ 11. We read *Keane* to stand for the proposition that, when an out-of-state insurance policy provides third-party bodily injury liability coverage, the language of an extraterritorial clause in the policy may act to increase the limit of the existing coverage to the minimum amount of bodily injury coverage required under Wisconsin's financial responsibility law. The Progressive policy issued to Stegner, however, provided her no bodily injury liability coverage whatsoever, and there is thus no coverage limit which can be increased to meet the Wisconsin financial responsibility minimum.

¶ 12. West Bend's final contention is that under Florida's "partial no-fault" insurance law, a Florida driver who maintains personal injury protection coverage enjoys a limited immunity from liability for injuries sustained by others in an automobile accident. From this, West Bend would have us conclude that the Progressive policy issued to Stegner does indeed provide a variant form of bodily injury liability

---

[5] The financial responsibility provisions in effect in Wisconsin at the time of the accident in *Keane v. Auto-Owners Insurance Co.*, 159 Wis. 2d 539, 464 N.W.2d 830 (1991), were identical in all relevant respects to the those in effect today. *See, e.g.,* WIS. STAT. §§ 344.15, 344.33 (1987–88).

coverage—coverage which may then be "reformed" under the extraterritorial clause to create $25,000 of bodily injury liability coverage for Rasmussen's death in the Wisconsin accident. We find nothing in the language of Stegner's policy, WIS. STAT. ch. 344, *Keane*, or any of the other authorities West Bend cites that would require or even permit such a result.[6]

## CONCLUSION

¶ 13. For the reasons discussed above, we conclude that Progressive cannot be held liable to West Bend on the present record, and we affirm the judgment of the circuit court dismissing Progressive from the litigation.

*By the Court.*—Judgment affirmed.

---

[6] We note that under the second provision in the Progressive extraterritorial clause, if a state's "compulsory insurance or similar law" requires a non-resident driver to maintain insurance, Stegner's policy "will provide . . . the required minimum amounts *and types* of coverage" (emphasis added). Thus, the "compulsory insurance" provision perhaps accomplishes the result which West Bend seeks—the transmutation of Stegner's personal injury protection coverage into third-party, bodily injury liability coverage. As we have discussed, however, Wisconsin has not enacted a compulsory insurance mandate, and the "compulsory insurance" provision in the Progressive policy has no application on the present facts.